619 P.2d 1240

**Isabel DURAN, Appellant,**

v.

**NEW MEXICO DEPARTMENT OF HUMAN SERVICES, INCOME SUPPORT DIVISION, Appellee.**

**No. 4350.**

Court of Appeals of New Mexico.

March 4, 1980.

See also, 95 N.M. 188, 619 P.2d 1232.

Gary J. Martone, Albuquerque, for appellant.

Jeff Bingaman, Atty. Gen., Robert N. Hilgendorf, Deputy Atty. Gen., Gordon L. Bergman, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

HENDLEY, Judge.

Mrs. Duran appeals from an administrative denial of her application, on behalf of her one dependent child, for aid to families with dependent children (AFDC) benefits.

### FACTS

Isabel Duran is married to Mr. Duran. Mrs. Duran's daughter Jessica, a minor child of a former marriage, lives with Mr. and Mrs. Duran. Mr. Duran has employment income. They also have income from rental property. The State used one–half of all income in computing need. On this basis income exceeded the permissible limits. Benefits were denied.

The sole issue presented to this court is the validity of New Mexico's method of calculating income available for the child's support. In calculating a child's eligibility for AFDC benefits, the New Mexico Department of Human Services Manual, § 221.832, states in part:

> A. *Availability of Income*–In determining whether the budget group is eligible for AFDC on the condition of need, income currently received by members of the household is considered available to the budget group in the amounts specified below....

> \*    \*    \*    \*    \*    \*

> 1. *Division of Income between Spouses*–In keeping with the State's community property law, one half (½) the community property income of spouses is considered available to each spouse when they live together. The separate income of a spouse is considered available only to that spouse....

> \*    \*    \*    \*    \*    \*

> All income received by the spouses will be considered community income, unless the client can demonstrate, to the worker's satisfaction, that it is separate income.

> \*    \*    \*    \*    \*    \*

2. *Income of a Parent* —When children and their parent(s) live together, the income of the parent(s) is considered to be available to the budget group which includes that parents' [sic] dependent children. . . . The amount of income available is that which remains after the deduction of the maintenance allowances described in paragraph 5 below.

## BARELA AND NOLAN

Two earlier cases have interpreted this precise issue. *See Barela v. New Mexico Department of Human Services, Income Support Division,* 94 N.M. 288, 609 P.2d 1244 (Ct.App.1979), *cert. denied* December 14, 1979; *Nolan v. de Baca,* 603 F.2d 810 (10th Cir. 1979). Both of these cases found the New Mexico rule to be in violation of the relevant federal regulation, 45 C.F.R., § 233.90(a), and, therefore, invalid under the supremacy clause. That section states in part:

(a) *State plan requirements.* A State plan under title IV–A of the Social Security Act shall provide that:

(1) The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, . . . will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. . . .

In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions;
. . . .

We believe both cases have misinterpreted the focus of New Mexico's regulation. In *Barela* the court viewed the New Mexico regulation as presuming that one–half of the wage earner's income was available to the support of the stepchild, even though no legal duty to support the stepchild exists. The court went on to state that in the absence of actual proof of stepparent's income being made available to the child, the regulation was impermissible. Relying on *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 59 L.Ed.2d 1, 99 S.Ct. 802 (1979), *Barela* said that, since the New Mexico regulation is contrary to and serves to subvert federal regulations, it must fall.

Two basic considerations underlying the *Barela* decision are: (1) that the income being presumed available for the support of the child is the income of the wage–earner's stepfather as opposed to that of the mother; and (2) that reaching income earned by the stepfather is contrary to and subverts important federal policy.

The *Nolan* case is similarly based on the same assumptions. In *Nolan* the court adopted the following finding of the trial court: " 'it is agreed in the present action that the income in question is that of plaintiff's husband . . .' ". The court then continued to develop the policy basis underlying its federal preemption argument.

*Nolan* cited 45 C.F.R., § 233.90(a), and the United States Supreme Court's decision in *Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), for the proposition that "parent" within the meaning of the federal regulations is limited to one against whom the child would be able to initiate a legal action to enforce that person's duty to support the child. The court concluded that, since the New Mexico regulation is contrary to an important federal policy, under *Hisquierdo* the regulation must fall. *Nolan* also argued that the State's position on the definition of income was merely a technical argument and as a practical matter failed to distinguish itself from the presumptions struck down in *Lewis,* which held that the income from a "man–in–the–house" could not be presumed available for the child's support.

## FEDERAL CONCEPT OF COMMUNITY PROPERTY INCOME

In *Poe v. Seaborn*, 282 U.S. 101, 75 L.Ed. 239, 51 S.Ct. 58 (1930), the Supreme Court stated:

> Without further extending this opinion it must suffice to say that it is clear the wife has, in Washington, a vested property right in the community property, equal with that of her husband; and in the income of the community, including salaries or wages of either husband or wife, or both. A description of the community system of Washington and of the rights of the spouses, and of the powers of the husband as manager, will be found in *Warburton v. White*, 176 U.S. 484 [20 S.Ct. 404, 44 L.Ed. 555].

> The taxpayer contends that if the test of taxability under Sections 210 and 211 is ownership, it is clear that income of community property is owned by the community and that husband and wife have each a present vested one–half interest therein.

> \*     \*     \*     \*     \*     \*

> The obligations of the husband as agent of the community are no less real because the policy of the State limits the wife's right to call him to account in a court. Power is not synonymous with right. Nor is obligation coterminous with legal remedy. The law's investiture of the husband with broad powers, by no means negatives of the wife's present interest as a co–owner.

> We are of opinion that under the law of Washington the entire property and income of the community can no more be said to be that of the husband, than it could rightly be termed that of the wife.

This same result was reached with regard to other community property states by the United States Supreme Court. *See Goodell v. Koch*, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247 (1930) [Ariz. law]; *Hopkins v. Bacon*, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249 (1930) [Tex. law]; and *Bender v. Pfaff*, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252 (1930) [La. law]. In *Hopkins* the Supreme Court explained its holdings in all four cases as resting on whether the wife has "a proprietary vested interest in the community property."

## NEW MEXICO'S CONCEPT OF COMMUNITY PROPERTY INCOME

New Mexico has long recognized that its community property system grants the wife a present proprietary interest in the income of the community. In *Beals v. Ares*, 25 N.M. 459, 185 P. 780 (1919), the Supreme Court stated that New Mexico's community property law "clearly recognizes an existing, present interest [in the income of the community] in the wife during the existence of the matrimonial status." *Beals* went on to state:

> From the foregoing, the following propositions may be accepted as settled:

> 1. That under the law in this jurisdiction, the wife's interest in the community property is equal with that of the husband; that while he is by statute made the agent of the community and given dominion and control over the community property during the continuance of the marriage relation, his interest in the property by reason of such fact is not superior to that of his wife.

*See also* Swihart on New Mexico's long–standing commitment to the proposition of equal ownership by the spouses in "Federal Taxation of New Mexico Community Property," 3 Natural Resources Journal, 104, 113–116 (1963–1964).

In *Hughes v. Hughes*, 91 N.M. 339, 573 P.2d 1194 (1978), our Supreme Court stated:

> The reasonableness of community ownership of marital property has been recognized by courts in non–community property states. It has been rightfully held that, viewed solely as a matter of economy, the labor, pain, and drudgery required of the mother in sustaining the home, giving birth to and rearing the children will often more than offset the contribution of the father to the family budget. In *Strauss v. Strauss*, 148 Fla. 23, 3 So.2d 727, 728 (1941) the court wistfully pointed out:

In the southwest, where community property is recognized, the husband and wife share equally in all property accumulated during coverture. There is a perfectly sound basis for this rule and it will be applied in this State when the circumstances warrant.

\* \* \* \* \* \*

Under community property law no distinction is made between husband and wife in respect to the right each has in the community property. The husband receives no higher or better title than does the wife. The plain public policy that this law expresses is that the wife shall have equal rights and equal dignity and shall be an equal benefactor in the matrimonial gain. "It is altogether fitting and proper that woman should be thus esteemed by the law in fixing her status if she is to be considered in fact as well as in theory an essential factor in the economy of the marital community." *La Tourette v. La Tourette*, 15 Ariz. 200, 137 P. 426, 428 (1914).

Further, New Mexico's commitment to equal ownership of community assets is based upon a constitutional mandate. This is expressly recognized in § 40–3–7, N.M.S.A.1978, which states:

40–3–7. *Purpose of act.*

The purpose of the Community Property Act of 1973 [40–3–6 to 40–3–17 NMSA 1978] is to comply with the provisions of Section 18 of Article 2 of the constitution of New Mexico, as it was amended in 1972 and became effective on July 1, 1973, by making the provisions of the community property law of New Mexico apply equally to all persons regardless of sex.

■ Therefore, under the standards announced by the United States Supreme Court in *Poe* and *Hopkins*, the wife has income equal to one–half the total community income regardless of what proportion of that income is actually paid to that spouse in the form of wages or rents. Under this standard Mrs. Duran clearly has income equal to one–half the community income.

## CHILD'S LEGAL RIGHT TO REACH INCOME

■ As the court stated in *Nolan*, the crux of the matter is not whether under some legal technicality you can describe the wife as having an income equal to one–half the community income. The issue is whether the child has a means of enforcing the obligation of support to the extent of the value presumed to be available. In short, 45 C.F.R., § 233.90(a), and *Lewis* hold that a state may not presume money to be available for a child's support if the child cannot legally force that money to be applied to his or her support. The heart of the *Barela* decision and that in *Nolan* is that the child in New Mexico has no legal right to enforce the presumed support against the income earned by the stepfather. Therefore, the sole question is whether Jessica Chavira can force the income being credited to her mother for her support to be used for that support.

■ It is undisputed that the natural parent, Mrs. Duran, has an obligation to support her daughter, Jessica. *Adoption of Doe*, 89 N.M. 606, 555 P.2d 906 (Ct.App. 1976). It appears equally clear that Jessica could obtain a judgment forcing Mrs. Duran to adequately support her. Section 40–3–10 A, N.M.S.A.1978, sets the priorities for satisfaction of separate debts:

A. The separate debt of a spouse shall be satisfied first from the debtor spouse's separate property, excluding that spouse's interest in property in which each of the spouses owns an undivided equal interest as a joint tenant or tenant in common. *Should such property be insufficient, then the debt shall be satisfied from the debtor spouse's one–half interest in the community property* or in property in which each spouse owns an undivided equal interest as a joint tenant or tenant in common, excluding the residence of the spouses. Should such property be insufficient, then the debt shall be satisfied from the debtor spouse's interest in the residence of the spouses,

except as provided in Section 42–10–9 NMSA 1978. Neither spouse's interest in community property or separate property shall be liable for the separate debt of the other spouse. (Emphasis added.)

Therefore, Mrs. Duran does not only have a technical income resulting from her one–half share in the community income, but that one–half share in the community income provides the legal basis for her daughter's legitimate claim on that one–half interest in the community income.

In *Barela* the court cites *Kelley v. Iowa Department of Social Services*, Iowa, 197 N.W.2d 192 (1972). In *Kelley* the court allowed the Iowa Department of Social Services to presume money earned by that stepfather to be available for the support of the stepdaughter because the stepdaughter could make a legal claim on those funds. Similarly, in the instant case the State should be permitted to presume that one–half of Mr. Duran's income, Mrs. Duran's interest in the community income, is available for the support of Jessica because Jessica can also make a legal demand on that sum of money because of a duty to support. *See Adoption of Doe, supra.*

Appellant's reliance on *Hisquierdo* is misplaced. In *Hisquierdo* the community property rules of the State of California served to provide the wife with an interest that was expressly forbidden by statute. In the instant case there is no such conflict with federal regulations or statutes. The New Mexico rule serves to fulfill the policy considerations expressed within 42 U.S.C., § 602(a)(7), which provides in part:

> (a) A State plan for aid and services to needy families with children must ... (7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, ....

Where a parent has income that is available for the support of the child it is inappropriate for the State not to count that income for the child's support. To say that one–half of the community income is not availa-

ble to the wife to support the wife's child is to similarly deny the wife's right to one–half the community interest for any reason. *Barela* is contrary to long–established New Mexico law which grants the wife a present one–half interest in the income earned by the community. *Beals, supra; Hughes, supra;* and Swihart, "Federal Taxation of New Mexico Community Property," *supra.*

A final important policy consideration was explained in *United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966) when the court stated:

> We decide only that this Court, in the absence of specific congressional action, should not decree in this situation that implementation of federal interests requires overriding the particular state rule involved here. Both theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family–property arrangements. They should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.
>
> Each State has its complex of family and family–property arrangements. There is presented in this case no reason for breaching them ....

Under the facts of this case there is no reason for breaching the State's "complex of family and family–property arrangements."

The two basic assumptions upon which *Nolan* and *Barela* were based are incorrect. New Mexico's regulation § 221.832 is not in conflict with federal policy. That policy mandates that this rule be upheld. Equally, if not more important, is the undermining effect the *Barela* decision has on New Mexico's long–standing view of community property rights, which has been recently reaffirmed in *Hughes. Barela* mistakenly interpreted the law and is accordingly overruled. *See State v. Vigil,* 86 N.M. 388, 524 P.2d 1004 (Ct.App.1974).

The decision of the New Mexico Department of Human Services, Income Support Division, is affirmed.

IT IS SO ORDERED.

ANDREWS, J., concurs.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

The decision of the Department should be reversed on the basis of *Barela v. New Mexico Department of Human Services*, 94 N.M. 288, 609 P.2d 1244 (Ct.App.1979), *cert. denied* December 14, 1979, and *Nolan v. de Baca*, 603 F.2d 810 (10th Cir. 1979).

The relevant HEW regulation, 45 C.F.R., § 233.90(a)(1), provides in part:

.    .    .    .    .

In establishing financial eligibility and the amount of the assistance payment, only such net income as is *actually* available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions; .... [Emphasis added.]

While the regulation clearly permits a state to consider the income of the natural or adoptive parent in computing AFDC assistance, it is my opinion, based on the above cited provision, that it is the intent of the federal regulation that only *actual* income be computed. While a spouse has a present proprietary interest in one–half of the community income under New Mexico community property law, this legal concept of income does not necessarily mean that the spouse has *actual* income. The New Mexico regulation makes an impermissible assumption of actual income.