536 P.2d 239

The CITY OF TEMPE, a Municipal Corporation, et al., Appellants,

v.

Alfred G. RASOR and Kathryn G. Rasor, his wife, Appellees.

No. 1 CA–CIV 2792.

Court of Appeals of Arizona,
Division 1,
Department C.

June 10, 1975.
Rehearing Denied Sept. 9, 1975.
Review Denied Oct. 16, 1975.

C. Brad Woodford, Asst. City Atty., Tempe, for appellants.

Rawlins, Ellis, Burrus & Kiewit, by Edward O. Burke, Phoenix, for appellees.

## OPINION

WREN, Judge.

The question presented on this appeal is whether the trial court erred in overruling a Tempe City Council's decision that appellees' property should not be rezoned to allow a commercial use in an area zoned for primary industrial uses. We find that it did.

The parcel of land involved, comprising approximately .77 acres or 37,000 square feet, is situated within a sixty acre industrial park on the north side of Broadway Road, approximately 2,000 feet east of the northeast corner of McClintock Drive and Broadway Road in the City of Tempe.

The industrial park area had at one time been zoned I–2, light industrial, which allowed a property owner to develop any use allowed in a C–1, commercial zone. In June of 1972, the City amended its zoning ordinance, placing greater restrictions on commercial development within the area. In relevant part, the ordinance restricted retail commercial operations in the industrial area to ten percent of the gross floor area of the primary industrial use. All commercial operations not directly related to the primary industrial use, or that exceeded the ten percent floor area limitation, had to obtain a use permit.

The appellees, Alfred G. Rasor and Kathryn G. Rasor, his wife, (Rasors) began negotiations to purchase the property in May or early June of 1972. They were desirous of putting up a convenience market, a use permitted under the original ordinance but not under the amended ordinance. In August, some two months after Tempe had adopted the amended ordinance, Rasors entered into a purchase contract. The purchase was made contingent upon their successful application for a use permit. However, the application for such permit was denied on November 20, 1972 by the Tempe Board of Adjustment. Nevertheless, Rasors closed escrow on December 20, 1972, and purchased the property.

In February of 1973, Rasors filed an application with the City of Tempe to rezone their property from I–2, light industrial, to C–1, commercial. After a hearing, the City Planning Commission on February 26, 1973, voted 4 to 3 to recommend approval. However, on March 22, 1973, after reviewing the Commission's divided recommendation, and after conducting its own hearing, the City denied the application by a 6 to 0 vote. The Rasors then brought an action for declaratory judgment in the Superior Court.

Rasors' contention before the trial court was that the refusal of the City to allow them to use their property for a commercial purpose was arbitrary and discriminatory in view of existing commercial development in the area; and that such refusal had no substantial relationship to the public health, safety or welfare.

On March 7, 1974, judgment was rendered in favor of Rasors, based on the following finding:

"[T]he application of the Zoning Ordinance of the City of Tempe as applied to [Rasors'] property constitutes an unreasonable restriction on the use of [Rasors'] property and is an unreasonable exercise of the police power on the part of the City of Tempe . . . ."

It is the City of Tempe's contention that the reasonableness of the ordinance was "fairly debatable," and accordingly, the City Council's decision should have been sustained by the trial court.

We start with the proposition that zoning enactments being legislative functions, are cloaked with a presumption of validity. Mueller v. City of Phoenix, 102 Ariz. 575, 435 P.2d 472 (1967); Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101 (1959); City of Phoenix v. Collins, 22 Ariz.App. 145, 524 P.2d 1318 (1974); City of Phoenix v. Beall, 22 Ariz.App. 141, 524 P.2d 1314 (1974); City of Phoenix v. Price, 18

Ariz.App. 144, 500 P.2d 1132 (1972). To overcome this presumption it must be shown that the classification is clearly arbitrary and unreasonable and without any substantial relation to the public health, safety, morals or general welfare. City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923 (1928) ; Collins, *supra.*

The limited function of the judiciary in zoning matters is reflected by the following quote from Rubi v. 49'er Country Club Estates, Inc., 7 Ariz.App. 408, 411–412, 440 P.2d 44, 47–48 (1968) :

> "With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. * * *" Robinson v. City of Bloomfield Hills, 350 Mich. 425, 86 N.W.2d 166, 169 (1957).

That the trial court or this court may disagree as to the advisability of an ordinance or the refusal to amend it, is of no moment, even if we were to indulge in the elusion that an imperfect zoning regulation may be corrected by judicial scrutiny on appeal. It is immaterial whether we would have been wiser if we had been called upon to perform this legislative function. As stated in Rubi, *supra,* "Courts are ill equipped to sit as super-zoning commissions. Therefore, where the reasonableness of a zoning ordinance is fairly debatable, it must be upheld." 7 Ariz.App. at 411, 440 P.2d at 47.

A definition of the "fairly debatable" standard is set forth in 8A McQuillin, Municipal Corporations, § 25.281 at 291–292 (3rd ed. 1965). In pertinent part it states:

> "[I]f reasonable minds differ as to whether a zoning restriction has a substantial relation to one of these funda-mental purposes of the police power and of zoning, the restriction must stand as a valid exercise of the police power."

Whether the appellate court is bound by the trial court's findings as to reasonableness of an ordinance has been the subject of conflicting decisions in this Court. *Compare* City of Phoenix v. Burke, 9 Ariz.App. 395, 452 P.2d 722 (1969), *with* Rubi, *supra.* Without detailing here the conflict, we choose to follow the course charted by *Price* and *Beall,* and follow the *Rubi* rationale, holding that the trial court's findings are not binding on the reviewing court if the record shows the question is "debatable." Accordingly, the function of this court is to determine whether the record shows a reasonable basis for the action of the zoning authorities, and if the reasonableness of the ordinance is fairly debatable, the legislative determination will not be disturbed.

In answering this question, the reviewing court considers such factors as the character of the property in question, the nature of the surrounding area, and recent trends of development in the area. *See* Price, *supra.*

The record reflects the following physical facts. Broadway Road is a major east-west arterial through Tempe. On the north side of Broadway, running east of McClintock Drive (a north-south thoroughfare), there are four existing developments —a gasoline service station, O'Malley's Building Materials Center, a Dunn Edwards Paint Store, and the Tip Top Nursery. Rasors' property is situated between the paint store and the nursery. A proposed new street adjacent to the subject property to the west would, when completed, place Rasors' land at the corner of an intersection. However, though this new street would intersect with Broadway, it would not be a through street.

The gasoline station, zoned C–2, is at the intersection of Broadway Road and McClintock Drive, and is not within the industrial park. To the east and rear of the

service station is the O'Malley develop-
ment, a mixed industrial-commercial use,
which was granted a use permit to exceed
the commercial space limitation of the
amended ordinance. The only factual con-
flict in the evidence relates to the overall
nature of this development. Don Hull, the
Tempe Planning Director depicted it as
being 70% industrial and 30% commercial,
whereas Rasors characterized it as being
75% commercial and 25% industrial. Hull
apparently based his opinion on the amount
of commercial space O'Malley's had in use
in proportion to the total amount of prop-
erty it had in the park, including 10 to 15
acres not yet developed. Rasors based
their conclusion on the amount of commer-
cial floor area O'Malley's is presently us-
ing in proportion to the rest of the floor
area.

Contiguous to O'Malley's is the Dunn
Edwards Paint Store, another mixed in-
dustrial-commercial use, which was also
granted a use permit to exceed the com-
mercial space limitation of the ordinance.
Adjacent to Dunn Edwards, and directly
across the proposed road from Rasors'
property, is vacant land owned by the
Southern Pacific Railroad Company—the
largest landowner in the industrial park.
The railroad has filed a preliminary plat
for an industrial subdivision with the
Tempe Planning Commission.

Contiguous to and east of Rasors' prop-
erty is the Tip Top Nursery, a commercial
establishment which existed prior to the
adoption of the amended ordinance and is
classified as a non-conforming use. To
the east of the nursery, the land is vacant
for approximately 800 to 1200 feet before
a residential zone starts. On the south
side of Broadway, the development has
been primarily multi-family residential
with some office buildings.

At the trial, Rasors submitted letters
from the Southern Pacific Railroad Com-
pany and the Tip Top Nursery, stating
that they had no objection to a rezoning of
the parcel. In addition, John Rasor, em-
ployed by the Rasors testified that Rasors

had previously submitted to the City, prior
to the adverse decision, a petition signed
by 111 residents living on the south side of
Broadway in favor of the rezoning. No
petitions adverse to this position were
presented by the City. Rasor acknowl-
edged that the property was not incapable
of being industrially developed. He stated
however, that because of its small size, and
its location at an intersection on a major
arterial road, it would be more valuable if
developed commercially. A similar view
was expressed by Walter Stevens, an MAI
appraiser who expressed an opinion that
the highest and best use of the property
was for a convenience market use. Con-
troverting testimony came from Hull, who
stated that a commercial operation such as
proposed by the Rasors was not the highest
and best use.

■ Though previously indicated, we
note again that Rasors acquired the prop-
erty in question with the full knowledge of
the restriction under the amended ordi-
nance. As noted in Beall, *supra*:

"[O]ne who buys an area which may
be too small to develop under the exist-
ing zoning in the hopes of or on the
gamble of securing a zoning modifica-
tion cannot be heard to complain when
the legislative body declines to change
the overall plan for the benefit of the
gambling buyer." 22 Ariz.App. at 145,
524 P.2d at 1318.

■ Also, as pointed out in City of
Phoenix v. Fehlner, 90 Ariz. 13, 363 P.2d
607 (1961), the mere fact that property
would be substantially more valuable if an-
other use were permitted is not in itself
sufficient reason to invalidate an existing
zoning ordinance. The court laid down
the following test quoting from the land-
mark case of Arverne Bay Construction
Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d
587, 589 (1938):

"To sustain an attack upon the validity
of the ordinance an aggrieved property
owner must show that if the ordinance is
enforced the consequent restrictions

upon his property preclude its use for any purpose to which it is reasonably adapted." 90 Ariz. at 19, 363 P.2d at 611.

*See also,* Ivancovich v. City of Tucson Board of Adjustment, 22 Ariz.App. 530, 529 P.2d 242 (1974).

Suitability for a particular use does not mandate zoning to permit that use as a matter of law. To hold otherwise would be the very antithesis of sound zoning. Moreover, we find it neither unreasonable nor arbitrary for Tempe to be excluding so called higher uses (commercial) from an industrial district. *See* R. Anderson, American Law of Zoning, § 8.34 (1968); *compare* Katobimar Realty Co. v. Webster, 20 N.J. 114, 118 A.2d 824 (1955) *with* Newark Milk & Cream Co. of Newark v. Parsippany-Troy Hills, 47 N.J.Super. 306, 135 A.2d 682 (1957). To paraphrase the words of Mr. Justice Jacobs in Pierro v. Baxendale, 20 N.J. 17, 118 A.2d 401 (1955), it must always be remembered that the duty of selecting particular uses which are congruous in light industrial zones was vested by the legislature in the municipal officials rather than in the courts. Once the selections are made and embodied in a zoning ordinance they become presumptively valid and are not to be nullified except upon an affirmative showing that the action taken by the public officials was unreasonable, arbitrary and capricious.

This Court recognizes that the City of Tempe has experienced a burgeoning growth. Counsel for the City notes in his brief that since 1950 the population has exploded from 7,684 to over 100,000 persons. Manifestly there is a strong need for providing for sound and orderly growth. In response thereto Tempe has adopted a General Plan against which all development proposals are measured. The property here is situated within an area designated for industrial development on this General Plan. On this point Hull testified as follows:

"Q. What is the basis for the theory of limiting commercial development in industrial areas?

"A. Very difficult to get quality industrial development unless you have relatively monolithic land use pattern."

In response to a question as to the difference between O'Malley's development and Rasors' proposal, Hull stated:

"A. I think it is its physical size, its location, the fact that it is industrially—the commercial is industrially oriented. I think it makes more sense to locate commercial developments in the area at the intersection than it does to dribble it out and strip it and piece it in an area that is not primarily commercial."

As to the propriety of Tempe granting the Dunn Edwards facility a use permit Hull pointed out that:

"A. [Dunn Edwards] indicated to us there would be a retail showroom —retail facilities, but that the retail facilities were primarily not geared for public use, not open to the general public, that they were facilities for contractors to view and purchase; for interior decorators to view and purchase and other professional and quasiprofessional people who made use of their products to view and purchase.

"Q. Does in fact Dunn Edwards at the location have a warehousing facility for other retail outlets in the valley?

"A. It is either warehouse or retailing. It is a combination of the both."

As to rezoning of Rasors' property Hull explained:

"A. I recommend denial [of the rezoning request] inasmuch as we feel that this is a primary example of spot commercial zoning, and the embryonic form of strip commercial zoning, both of which we feel are not in the best interests of the

City of Tempe, and are not good sound zoning practice. We have great concern about the effect and impact it would have upon the adjacent development, the long material stability of the adjacent development.

"Q. And is there any documents within the City of Tempe which espouses the theory of strip commercial development along arterial streets should be discouraged, in fact terminated?

"A. The general plan of the City of Tempe generally makes that as— recommends that as a mandate to the City."

\*   \*   \*   \*   \*   \*

"A. . . . . I think it makes more sense to locate commercial development in the area at the intersection than it does to dribble it out and strip it and piece it in an area that is not primarily commercial."

\*   \*   \*   \*   \*   \*

"A. I think number one: [a commercial market] should be a part of a preplanned development proposal, not an afterthought or just an interjection of a zoning petition with no relation to an overall plan. I think it is very possible that type of use can be accomodated in lands that would normally be designated for commercial use or perhaps closely adjacent to it, probably in closer proxmity [sic] to the intersection.

"Q. If it were closer to the intersection then, it would be grouped around other commercial related activities?

"A. That would be a better solution to the problem, much better."

The essence of zoning is to provide a balanced and well ordered scheme for all activity deemed essential to the particular municipality. The kind of community and the kind of balance is exclusively a matter for legislative determination, subject only to judicial scrutiny as to reasonableness. Granted, the zoning practice by the City has allowed use permits exceeding the ten percent limitation as to commercial use, but it escapes us as to how that practice raises a limitation in law upon the scope of municipal powers granted under the zoning statutes. We do not find it unreasonable in its application here. Rasors' property is not being singled out for zoning discrimination. The evidence reflects that it may be developed substantially the same as surrounding parcels have been or may be developed. The proof is ample that it has a market, present and prospective, for both industrial and commercial purposes. This is clearly not a case of freezing land into idleness or nonproductivity. Tempe has not created, as urged by Rasors, an island of industrial use as to their property, amid a sea of commercial uses. Moreover, such reasoning completely overlooks the fact that the majority of the land set aside for the industrial district remains undeveloped.

The ordinance also reflects recognition by the City of the hazards of strip commercial zoning along major arterial highways with a high volume of fast traffic. Evidence was presented that the increase in pedestrian and vehicular traffic which such a convenience market would entail if approved, would create a dangerous situation in this regard.

We conclude that whether the ordinance was operating in a reasonable manner to assist the orderly and balanced growth of the City of Tempe is clearly debatable. The reservation and preservation of industrial sites with congruous uses may of course be encompassed within the General Plan of the City. Reasonable minds might well differ as to whether its action in restricting commercial development within industrial zones, and in refusing to rezone Rasors' property to exclude it from the center of an industrial park was a proper action, when judged in the light of a reasonable exercise of police power. An ar-

gument might well be weighed as to the wisdom of applying this ordinance to the Rasors' property, but this Court is not the proper forum to do the weighing. To hold otherwise under the facts of this case would emasculate the broad freedom of legislative judgment on public welfare, which must take into account a wide variety of values. It is not for us to reappraise those values.

The judgment of the trial court is therefore reversed with directions to enter judgment for the appellants that the "plaintiffs take nothing by their complaint."

NELSON, P. J., and FROEB, J., concur.