720 P.2d 513

**Joyce M. CORRIGAN,
Plaintiff-Appellant,**

v.

**CITY OF SCOTTSDALE, a municipal
corporation, Defendant-Appellee.**

No. 18239–PR.

Supreme Court of Arizona,
In Banc.

June 2, 1986.

Reconsideration Denied July 15, 1986.

Fennemore, Craig, von Ammon, Udall· & Powers by James Powers, Timothy Berg, and Jane Nicoetti-Jones, Phoenix, for plaintiff-appellant.

William E. Farrell, Scottsdale City Atty., Scottsdale, Schorr, Eldridge and Bangs by S.L. Schorr and Frank S. Bangs, Jr., Tucson, Lewis & Roca by John P. Frank and Michael O. Miller, Phoenix, for defendant-appellee.

CAMERON, Justice.

This is a petition for review of an opinion of the court of appeals, which reversed the trial court judgment in favor of the City of Scottsdale and declared its zoning ordinance void as an unconstitutional taking of Ms. Corrigan's property without just compensation. Corrigan v. City of Scottsdale, 149 Ariz. 553, 720 P.2d 528 [App.1985]. We have jurisdiction pursuant to art. 6 § 5(3) of the Arizona Constitution, A.R.S. § 12–120.24 and Rule 23, Ariz.R.Civ.App. Proc., 17A A.R.S.

The only issue to be decided on review is whether a landowner is entitled to money

damages for a temporary taking of property by reason of an invalid zoning ordinance.

The facts follow. Ms. Corrigan owns 5,738 acres of undeveloped land, which is made up of three contiguous parcels. The largest parcel of land is approximately 4,800 acres; a smaller parcel of 608 acres adjoins the large parcel in a single point, at its northwest corner. A third parcel of approximately 330 acres connects with the large parcel, at the large parcel's southwest corner. All of this property is a part of, or close to, the McDowell Mountains. This land previously had been part of the D.C. Ranch, owned by Corrigan's father and E.E. Brown. Ms. Corrigan obtained her part of the property by purchase for two million dollars from Brown's children.

In 1963, the City of Scottsdale (city) annexed the southern part of the DC Ranch, including the land involved herein. The McDowell Mountains thus became the only hilly or mountainous terrain within the city limits. The land was zoned by the city as R–1–35 which allows one single family residence on a lot of at least 35,000 square feet.

Later in 1977, the city, in accordance with its earlier general use plans, added sections 6.800 through 6.807 to its zoning ordinance thus creating the Hillside District. This ordinance established two areas, the Hillside Conservation Area and the Hillside Development Area. The two areas are divided by a "no development" line. This line is located wherever one of the following conditions is first encountered: unstable slopes subject to rolling rocks or landslides; bedrock areas; slopes of 15 percent or more; or shallow, rocky mountain soils subject to severe erosion. This line under certain conditions may be adjusted to where two of the enumerated conditions are present. The Conservation Area, which is all land above the "no development" line, is to be used solely for the conservation of open space with the land legally secured for such conservation by easement or dedication. The Development Area may be developed with some limitations, such as retaining a fixed minimum percentage of the land in its natural state. Finally, the ordinance provided density credits for the land in the Conservation Area which may be transferred to contiguous land in the Development Area.[1]

The Hillside District ordinance did not affect Ms. Corrigan's two smaller parcels of land; however, 3,836 acres or 80 percent of her 4,800 acre parcel is in the Conservation Area. Assuming that all possible adjustments in the "no development" line were made, 3,523 acres or 74 percent of this land would still remain in the Conservation Area.

Ms. Corrigan filed suit seeking a declaration that the ordinance was unconstitutional and further claiming money damages for the temporary taking of her property. Ms. Corrigan did not submit a development plan to the city either prior to or after filing the suit. The trial court entered findings of fact and conclusions of law that the ordinance was constitutional and that no taking of Ms. Corrigan's property had occurred. Accordingly, it dismissed the claim for damages.

The court of appeals reversed, stating that an unconstitutional taking without just compensation of Ms. Corrigan's land had occurred under both the United States and Arizona Constitutions. *Corrigan v. City of Scottsdale*, at 565, 720 P.2d at 540. Further, the appeals court held that the transfer of density credits could not constitute just compensation under the Arizona Constitution, as the Arizona Constitution requires payment of a judicially determined

1. Density credits are also known as transferable development rights. An ordinance, such as the one in this case, "provides that development which is prohibited on one parcel of land may instead be applied to other parcels, allowing these other parcels to be developed to a greater extent than zoning normally would allow." Note, The Transferability of Development Rights, 53 U.Colo.L.Rev. 165, 165 (1981). Thus, Ms. Corrigan may now build in the Development Area alone the same number of housing units that she could previously build before the ordinance in the Conservation and Development Areas combined. We express no opinion as to the legality or constitutionality of this scheme.

amount of money as compensation for such a taking. *Id.* Nevertheless, the appeals court upheld the dismissal by the trial court of the damages claim based on *Davis v. Pima County*, 121 Ariz. 343, 590 P.2d 459 (App.1978), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2885, 61 L.Ed.2d 312 (1979), which held that the sole remedy for confiscatory zoning is invalidation of the ordinance and not money damages. Corrigan, supra, 149 Ariz. at 565, n. 14, 720 P.2d at 540, n. 14. This court granted Ms. Corrigan's petition for review to determine whether the remedy for a temporary unconstitutional taking of a person's property by virtue of a confiscatory zoning ordinance should be so limited.

## SHOULD DAMAGES BE RECOVERABLE?

The issue of monetary damages for a regulatory "taking" of property without just compensation is not well settled in land use law. The United States Supreme Court has failed to decide this precise question on several occasions: *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981); *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, —— U.S. ——, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In fact, at this writing, it is set to examine the issue once again. *See MacDonald, Sommers & Frates v. County of Yolo* [3 CIV 22306 Cal.Ct.App., 3d Dist. unpublished opinion filed 24 January 1985], *cert. granted*, —— U.S. ——, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985). As there is no definitive interpretation on this issue under the Fifth Amendment of the United States Constitution, we will rely on the Arizona Constitution. A state constitutional analysis of this question is not unusual, *see Burrows v. City of Keene*, 121 N.H. 590, 432 A.2d 15, 22 (1981), and is quite appropriate in light of our unique constitutional provision.

Article 2 § 17 of the Arizona Constitution provides in part:

No private property shall be taken or damaged for public or private use without just compensation having first been made ... [and] until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury....

This provision, like the Fifth Amendment, prohibits a taking of property without just compensation but unlike the Fifth Amendment, specifically requires compensation for a taking to be made by a payment of money in a judicially determined amount. In the instant case, the court of appeals held and we agree that the Hillside Ordinance does "constitute a taking of property for which just compensation must be made." *Corrigan v. City of Scottsdale*, 149 Ariz. at 565, 720 P.2d at 540. Thus the next step, under the Arizona Constitution, should logically be the imposition of money damages. Nevertheless, the appeals court upheld the trial court's dismissal of the money damages claim based on *Davis v. Pima County, supra.*

In *Davis*, the court of appeals stated:

When a zoning ordinance is confiscatory it results in a "taking of the property and is, in effect, the exercise of the power of eminent domain."

\* \* \* \* \* \*

However, *though appellants established a "taking" if the board's action were not undone*, this does not mean they are entitled to money damages. \* \* The proper remedy when zoning is confiscatory is either to seek by declaratory judgment to invalidate the general zoning ordinance or to challenge the particular rezoning determination by means of a special action.

121 Ariz. at 345, 590 P.2d at 461. (emphasis added) (citations omitted). We do not agree. Admittedly, a zoning body should not have its ordinance invalidated and then have to pay full fair market value condemnation type damages based on a permanent taking. "[N]othing in the Just Compensa-

tion Clause empowers a court to order a government entity to condemn the property and pay its full fair market value, where the 'taking' already effected is temporary and reversible...." *San Diego Gas & Electric v. City of San Diego,* 450 U.S. at 659, 101 S.Ct. at 1307, (BRENNAN, J., dissenting). However, once an unconstitutional taking is shown, a person should receive damages for the time in which the confiscatory zoning ordinance has "taken the property", that is the time between the taking and the invalidation of the ordinance.

> [O]nce a court establishes that there was a regulatory "taking," the Constitution demands regulatory that the government entity pay just compensation for the period commencing on the date the regulation first effected the "taking," and ending on the date the government entity chooses to rescind or otherwise amend the regulation.

*San Diego Gas & Electric v. City of San Diego,* 450 U.S. at 654, 101 S.Ct. at 1305 (BRENNAN, J., dissenting) (citations and footnotes omitted). We believe that once a taking is found, the Arizona Constitution mandates the payment of money as damages for any injury suffered. Ariz. Const., art. 2 § 17. We agree with the simple logic expressed by Justice Brennan in his *San Diego Gas & Electric v. City of San Diego* dissent:

> Invalidation unaccompanied by payment of damages would hardly compensate the landowner for any economic loss suffered during the time his property was taken.

> \* \* \* \* \* \*

> If the regulation denies the private property owner the use and enjoyment of his land and is found to effect a "taking," it is only fair that the public bear the cost of benefits received during the interim period between application of the regulation and the government entity's recission of it. The payment of just compensation serves to place the landowner in the same position monetarily as he would

have occupied if his property had not been taken.

450 U.S. at 656–57, 101 S.Ct. at 1306, (BRENNAN, J., dissenting) (citations and footnotes omitted).

We are not alone in holding that a landowner may recover damages for a temporary taking by zoning. In a case where the plaintiff-landowner's Waterway Development Permit application was denied because the city "sought to impose a servitude upon the property to preserve 'the natural and traditional character of the land and waterway' ", the Texas Supreme Court stated, "[t]here was no suggestion that government may take or hold another's property without paying for it, just because the land is pretty. Our conclusion is that the City of Austin was liable in damages to the plaintiffs." *City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tx.1978).

In New Jersey, it has been flatly held that "[t]emporary takings are compensable." *Sheerr v. Township of Evesham,* 184 N.J.Super. 11, 445 A.2d 46, 73 (1982).

In a case where the City of Lincoln zoned the plaintiff's land for public use and clearly intended to use the land for a school and other government buildings, the North Dakota Supreme Court stated:

> We believe [the compensation remedy proposed by Justice Brennan] for cases involving a regulatory taking constitutes not only a legally correct analysis of the "taking" involved but also provides a practical and fair solution for all parties. If a landowner proves that governmental regulation has deprived him of all reasonable use of his property, he is entitled to receive just compensation.

*Rippley v. City of Lincoln,* 330 N.W.2d 505, 511 (N.D.1983).

More significantly, in a case very similar to the one before us the New Hampshire Supreme Court not only allowed damages for a temporary taking but also reasonable attorneys fees and double costs. *Burrows v. City of Keene,* 121 N.H. at 601–602, 432 A.2d at 22. In *Burrows,* the city not only failed to approve the plaintiff's subdivision plans but further, as in this case, zoned 109

acres of the plaintiff's land into a conservation area. 121 N.H. at 595, 432 A.2d at 17. The court rejected cases like *Agins v. Tiburon, supra,* and *Davis v. Pima County, supra,* which limit a landowner to invalidation by stating:

> [T]he owner's property has been taken during the interim period and he is entitled to compensation for that taking. Limiting the landowner to actions which only invalidate the offending regulation will encourage municipal planners and other public officials to attempt to throw the burdens accompanying "progress" upon individual landowners rather than the public at large. The allowance of damages ... during the period of the taking, however, should encourage such officials to stay well on the constitutional side of the line,....

*Burrows v. City of Keene,* 121 N.H. at 599, 432 A.2d at 20 (citations omitted).

We note that the reasons generally given for denying damages are that: (1) it usurps a legislative function; (2) it threatens substantial fiscal liability on local governments; and (3) it would inhibit governmental land planning. Note, *Just Compensation or Just Invalidation: The Availability of a Damages Remedy in Challenging Land Use Regulations,* 29 UCLA L.Rev. 711, 725 (1982). *See also* Wright, *Damages or Compensation for Unconstitutional Land Use Regulations,* 37 Ark.L.Rev. 612, 643–644 (1983). We believe these reasons do not justify such a rule.

First, since zoning is an exercise of the police power, it is often deemed a legislative function. *Davis v. Pima County,* 121 Ariz. at 345, 590 P.2d at 461; Note, *supra* at 725. Thus some argue that the awarding of damages deprives the legislative body of being the one to decide whether the regulation is appropriate in light of the fact that compensation will be paid. Such an argument misses the point. No legislative prerogative is usurped by awarding damages for the time the property was temporarily taken under an invalid zoning ordinance. The regulating body can still weigh all the relevant considerations and determine for itself how best to effectuate its policy in the future. The same alternatives are open to them after a remedy of invalidation plus temporary damages as exist after invalidation alone. The legislative body may pay to acquire the land outright, agree to pay the landowner a certain amount in order to continue the regulation, or simply abandon the regulation altogether. All that is added by an award of temporary damages is that the landowner is compensated for losses that he has already suffered by virtue of the unconstitutional taking. *See San Diego Gas & Elec. v. City of San Diego,* 450 U.S. at 656–657, 101 S.Ct. at 1306; Note, *supra* at 725–729.

Second, fears of fiscal liability did not stop courts from limiting or abolishing municipal sovereign immunity and likewise should not bar a person's constitutionally guaranteed compensation for the impermissible taking of his property. *Id.* at 726–727. Further, fiscal liability may be an incentive for responsible public planning. In this we note that a local government will not be liable for any substantial liability unless it irresponsibly imposed staggering losses onto a private citizen by its land regulation. D. Hagman, *Temporary Or Interim Damages Awards In Land Use Control Cases,* in *1982 Zoning and Planning Law Handbook* 201 (F.Strom.ed. 1982) (also found in Zoning & Plan.L.Rep. v. 4, n. 6 (June 1981)).

Finally, we do not believe that advocating responsible governmental planning is the same thing as inhibiting governmental planning. Public officials should consider their actions before enacting them. Mere invalidation does not provide any incentive for public planners not to experiment at an individual property owner's expense. Neither does invalidation provide any deterrent impact; instead the city can and often does enact another similarly restrictive regulation and force the landowner to undergo another costly litigation battle.[2] Without a

---

2. We borrow a portion of a footnote from Justice Brennan's dissent in *San Diego Gas & Elec. v. City of San Diego* because of its obvious relevance:

damages remedy, invalidation alone is a toothless tiger "capable of great roars about constitutional property rights but ineffectual in guarding against even obvious excesses resulting from multiple regulation." Note, *supra* at 734.

 The policy reasons in favor of denying damages are not persuasive. Governmental entities should be as mindful of a person's constitutional rights as anyone else. Therefore, under our constitutional provision requiring a payment of money for an unconstitutional taking of a person's property, we hold that invalidation is not the sole remedy, and the landowner is entitled to money damages from the time the regulation was protested or challenged. Statements in *Davis* which prohibit any recovery of money damages for a regulatory taking, by a confiscatory zoning ordinance, are overruled.

## THE PROPER MEASURE OF DAMAGES

Having determined that money damages are recoverable for a temporary taking by reason of an invalid zoning ordinance under art. 2 § 17 of the Arizona Constitution, we must now determine how those damages should properly be measured.

There has been extensive legal writing on the subject of how damages should be measured for a temporary taking. *See generally* D. Hagman & D. Misoznski, *Windfalls for Wipeouts* (1978); Johnson, *Compensation for Invalid Land-Use Regulations*, 15 Ga.L.Rev. 559 (1981); D. Hagman, *Temporary Or Interim Damages Awards In Land Use Control Cases, supra;* Wright, *Damages or Compensation for Unconstitutional Land Use Regulations, supra.* From these and many other writings have emerged "five basic rules for measuring damages: rental return, option price, interest on lost profit, before-after valuation (two alternatives), and benefit to the government." D. Hagman, *Temporary or Interim Damages Awards in Land Use Control Cases* in *1982 Zoning & Planning Law Handbook* at 218–227.

Each of these damage measures works well in some "taking" cases and inequitably, if at all, in others. This is because no one rule adequately fits each of the many factual situations that may be present in a particular case. Such problems as: whether the losses are speculative; when the taking actually occurred; whether it caused any damage; and whether it was an acquisitory or nonacquisitory setting combine to make each measure of damages, in some cases, a "guessing game" between too little compensation on the one hand and providing a windfall on the other.

 Recognizing this problem, we feel the best approach is not to require the application of any particular damage rule to all temporary taking cases. Instead we hold that the proper measure of damages in a particular case is an issue to be decided on the facts of each individual case. It is our intent to compensate a person for the losses he has actually suffered by virtue of

Invalidation hardly prevents enactment of subsequent unconstitutional regulations by the government entity. At the 1974 annual conference of the National Institute of Municipal Law Officers in California, a California City Attorney gave fellow City Attorneys the following advice:

"IF ALL ELSE FAILS, MERELY AMEND THE REGULATION AND START OVER AGAIN.

"If legal preventive maintenance does not work, and you still receive a claim attacking the land use regulation, or if you try the case and lose, don't worry about it. All is not lost. One of the extra 'goodies' contained in the recent [California] Supreme Court case of *Selby v. City of San Buenaventura*, 10 C.3d 110,

[109 Cal.Rptr. 799, 514 P.2d 111] appears to allow the City to change the regulation in question, even after trial and judgment, make it more reasonable, more restrictive, or whatever, and everybody starts over again.

\* \* \* \* \* \*

"See how easy it is to be a City Attorney. Sometimes you can lose the battle and still win the war. Good luck." Longtin, Avoiding and Defending Constitutional Attacks on Land Use Regulations (Including Inverse Condemnation), in 38B NIMLO Municipal Law Review 192–193 (1975) (emphasis in original). *San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. at 656, n. 22, 101 S.Ct. at 1306, n. 22 (BRENNAN, J., dissenting).

the taking. Either the parties may agree to an appropriate damage measure or each may present evidence as to the actual damages in the case and its correct method of determination. The damages awarded and the way to measure those damages thus may be adapted to compensate the party whose land has been taken for his actual losses.

We emphasize, however, that no matter what measure of damages is appropriate in a given case, the award must only be for *actual damages.* Such actual damages must be provable to a reasonable certainty similar to common law tort damages. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). This approach will compensate for losses actually suffered while avoiding the threat of windfalls to plaintiffs at the expense of substantial government liability. Wright, *Damages or Compensation for Unconstitutional Land Use Regulations,* 37 Ark.L.Rev. at 637–39; *City of Austin v. Teague,* 570 S.W.2d at 395. In adopting this approach we agree with Professor Wright that:

> Most of the policy arguments in opposition to compensation or damages for regulatory takings are premised on the fear that Draconian liability on local governments will result. However, limiting recovery to a landowner's actual losses where the regulatory taking is temporary should help eliminate the threat of such burdensome liability. This approach adequately balances the public interest against private interests by requiring compensation for regulatory takings while limiting that compensation to actu-

al losses for temporary takings. Such a balance between public and private interests will not be achieved by the extreme approach of denying all compensation for regulatory takings and limiting landowners to injunctive and declaratory relief.

Wright, *Damages or Compensation for Unconstitutional Land Use Regulations,* 37 Ark.L.Rev. at 645.

Applying this principle of compensation for actual loss caused by a temporary taking to the present case reveals an insufficient record on the damages issue. The evidence of damages presented to the trial court was not focused on what actual losses, if any, were suffered by Ms. Corrigan. *See Id.* at 638, (an owner with no plans for undeveloped property at the time of the regulatory taking may have difficulty proving actual damages).[3] However, we cannot fault counsel for their failure to predict our ruling on this issue. We, therefore, remand this matter to the trial court for a determination as to the proper measure of damages in accordance with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, J., did not participate in the determination of this matter.

---

**3.** It is not surprising that Corrigan had no plan of development. As long as the property was "zoned" in the Conservation Area, there was no reasonable hope that anyone would purchase the property, even if there were a plan of development.