731 P.2d 113

**RANCH 57, an Arizona partnership, Plaintiff-Appellant,**

v.

**The CITY OF YUMA, a municipal corporation, Defendant-Appellee.**

**RANCH 57, an Arizona partnership, Plaintiff-Appellant,**

v.

**The COUNTY OF YUMA, a political subdivision of the State of Arizona, Defendant-Appellee.**

**Nos. 1 CA–CIV 8150, 1 CA–CIV 8631.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 2, 1986.

Review Denied Jan. 8, 1987.

Bonnett, Fairbourn & Friedman, P.C. by Francis J. Balint, Jr., Jerry C. Bonnett, Robert J. Spurlock, Phoenix, for plaintiff-appellant Ranch 57.

Jennings, Strouss & Salmon by Margaret D. Blaze and John B. Weldon, Jr., Phoenix, Maureen R. George, Yuma, for defendant-appellee City of Yuma.

Westover, Choules & Shadle, P.C. by William A. Nebeker and Wade Noble, Yuma, for defendant-appellee County of Yuma.

## OPINION

MEYERSON, Judge.

## I. STATEMENT OF FACTS

This matter arises out of separate appeals by plaintiff-appellant Ranch 57 from summary judgments granted in favor of defendant-appellee City of Yuma (City) and defendant-appellee County of Yuma (County). Due to the similarity of issues presented on appeal, we have consolidated the cases.

Ranch 57 is a partnership which owns property adjacent to the northeast end of two runways for the Yuma International Airport and the Marine Corps Air Station. Prior to the enactment of the zoning ordinances in question, Ranch 57's property was zoned to permit industrial or commercial development. Ranch 57 planned to develop the land for commercial ventures that included a laundromat, a fast-food restaurant, an auto and trailor parts store, and expansion of the existing gasoline station and camera store. Ranch 57 had also invested $15,000 toward the development of an improvement district to bring water and sewer services to the property. Prior to the passage of the zoning ordinances, Ranch 57 had planted citrus trees on the property. Ranch 57 asserts that the citrus trees were planted because excess stock existed from a nursery that was being operated on the property.

In July, 1976, Ranch 57 was informed that the property was going to be condemned for airport purposes. The federal government began negotiations for the purchase of the property in August, 1979. The complaint alleges that the federal government formally instituted condemnation proceedings in January, 1982, and has, in fact, now taken possession of the property. The value of the property for condemnation purposes will vary depending upon the outcome of the present litigation.

On June 20, 1979, the City adopted Ordinance No. 1837. Under the ordinance, clear zones were established for land adjacent to the airport runways. The ordinance prohibited any new uses of property within a clear zone except for non-livestock agricultural uses. No new structures were permitted. However, the ordinance did not affect the property of Ranch 57 until May 1, 1981, when the City annexed land which included the property owned by Ranch 57.

On August 20, 1979, the County adopted Article VII to the County Code which also established clear zones for the land adjacent to the airport runways, including the property owned by Ranch 57. Under Article VII, no permanent structures were permitted in the clear zone except for certain fencing. Article VII does not allow for any residential, commercial or recreational development on property located within a clear zone.

On April 26, 1984, Ranch 57 filed a complaint in Yuma County Superior Court against the City and the County alleging that the zoning ordinances resulted in an unconstitutional taking of private property without just compensation. On June 8, 1984, the City filed a motion to dismiss. The superior court treated the motion as one for summary judgment and granted judgment in favor of the City, finding that Ordinance No. 1837 was a valid exercise of the police power and that there had been no taking of Ranch 57's property. On January 9, 1985, the County filed its motion to dismiss. The superior court also treated this motion as one for summary judgment. The court once again ruled in favor of the

governmental defendant. Ranch 57 timely appealed both adverse judgments.

Ranch 57 advances several arguments for reversal. First, Ranch 57 argues that both zoning ordinances are invalid exercises of the police power. Second, Ranch 57 argues that the ordinances create an unconstitutional taking of private property without just compensation. Ranch 57 argues that if a taking is found to have occurred, it has established a claim for inverse condemnation and compensation is required. The governmental defendants dispute Ranch 57's contentions and, in addition, have raised a variety of procedural defenses. Of these, we find it necessary to consider only the statute of limitations.

## II. STATUTE OF LIMITATIONS

Both the City and the County assert that the applicable statute of limitations bars Ranch 57's constitutional claims. We are called upon to decide which one of the many assertedly applicable statutes applies to this case. During the course of this litigation, the parties have argued that the following statutes of limitations apply: A.R.S. §§ 12–523, 28–1868, 12–542(3), 12–526(A), and 12–550. Each of these shall be considered in turn.

■ On the face of A.R.S. § 12–523, this statute is not applicable to the instant case. It provides that "[a]n action to recover real property from a person in peaceable and adverse possession under title or color of title shall be commenced within three years after the cause of action accrues." Ranch 57's action is certainly not one to recover real property from either of the governmental defendants. Thus, A.R.S. § 12–523 is not applicable.

■ Nor is A.R.S. § 28–1868 applicable to this case. It provides:

An action brought to recover possession of or to clear title to real property claimed by the state, or any legal subdivision thereof, as a public highway or airport, or an action brought to recover compensation or damage for property taken or damaged in or for the construc-

tion of a public highway or airport, shall be commenced within two years after the cause of action has accrued and not afterwards.

The statute is divided into two independent clauses, either of which will trigger its application. The first clause is not applicable because Ranch 57 is not suing the City or the County to recover possession (or to clear title) of the property in question. The second clause is not applicable because Ranch 57 did not institute this suit as a result of construction to either the Yuma International Airport or the Marine Corps Air Station.

■ A.R.S. § 12–542(3) is a two-year statute of limitations applicable to actions for "trespass for injury done to the estate or the property of another." This statute applies to suits involving injury to property, *Hall v. Romero*, 141 Ariz. 120, 123, 685 P.2d 757, 760 (App.1984), as a result of a tortious or negligent act. *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979). Trespass is any unauthorized physical presence on another's property. *State ex rel. Purcell v. Superior Court*, 111 Ariz. 582, 584, 535 P.2d 1299, 1301 (1975). In the instant case, the injury to Ranch 57's property is alleged to have occurred by the passage of the zoning ordinances and not by the intentional or negligent physical presence of the City or County. Thus, A.R.S. § 12–542(3) is not applicable.

■ Ranch 57 argues that A.R.S. § 12–526(A), the ten-year statute of limitations for adverse possession cases, is applicable. This statute provides:

A person who has a cause of action for recovery of any lands ... from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action thereon within ten years after the cause of action accrues, and not afterward.

Ranch 57 cites several cases from other jurisdictions where courts have applied adverse possession statutes of limitations in inverse condemnation actions. *See, e.g., Krambeck v. City of Gretna*, 198 Neb. 608,

254 N.W.2d 691 (1977); *Sundell v. Town of New London,* 119 N.H. 839, 409 A.2d 1315 (1979); *see generally Annot.,* 26 A.L.R. 4th 68 (1983). The cases cited by Ranch 57 are factually distinguishable from the instant case. In all the cases cited, an act of the government caused some physical invasion of the plaintiff's property or some physical interference with the use of the property. *Cf. Busby v. State,* 101 Ariz. 388, 420 P.2d 173 (1966). Here, neither the City nor the County physically interfered with Ranch 57's use of its property.

■ Thus, we conclude that none of the above-mentioned statutes are applicable. We have also found no other prescribed statute for claims such as are presented by Ranch 57. Accordingly, we hold that A.R.S. § 12–550 is applicable to the instant case. A.R.S. § 12–550 is applicable to "[a]ctions other than for recovery of real property for which no limitation is otherwise prescribed." Such actions "shall be brought within four years after the cause of action accrues, and not afterward." *Id.*

Ranch 57 further argues that because the taking of property is a question of constitutional magnitude, the mere passage of time should not in any way serve to bar the cause of action. But the United States Supreme Court has held that even the vindication of constitutional rights may be time-barred where the application of a state statute of limitations is not inconsistent with federal policy. *Board of Regents v. Tomanio,* 446 U.S. 478, 485–93, 100 S.Ct. 1790, 1794–99, 64 L.Ed.2d 440, 447–53 (1980). On point is the Illinois Supreme Court decision in *Horn v. City of Chicago,* 403 Ill. 549, 87 N.E.2d 642 (1949). In *Horn,* the plaintiffs brought an inverse condemnation action based upon the construction of a viaduct by the City of Chicago. Plaintiffs alleged that the viaduct interfered with and destroyed their easements of light and air and their ingress and egress to and from the premises. The city filed a motion to dismiss based on the statute of limitations. Plaintiffs argued that the statute of limitations could not run against their cause of action because their claim was based on the constitution and that any statute restricting the time in which to file the complaint would be invalid. The Supreme Court of Illinois rejected the argument. The court stated:

We hardly think it reasonable that the framers of our constitution intended that one given a right of action for damages under the constitutional provision might delay his suit for many years when evidence, formerly within his power to produce, concerning the existence, cause and extent of the alleged damage, may have become lost, destroyed or otherwise beyond the defendant's power or control. The purpose of a statute of limitation is to require any necessary litigation be brought within such time as the particular facts and circumstances may be proved with the utmost certainty and before adequate proof has become stale or entirely lost. The legislature may, without violating constitutional guarantees, enact statutes which limit the time within which actions may be brought to enforce demands where there was previously no period of limitation, or which limit, change, and vary existing rules as to limitation of actions, either by shortening or extending the time within which the cause of action may be asserted. Even a substantive right created by a State constitution is governed and controlled in its enforcement and administration by regulatory and procedural legislation enacted by the General Assembly, which legislative enactments may include a limitation as to the period within which action may be taken to enforce the substantive right. We think it clear that the framers of the constitution did not intend that the rights given to damaged property owners ... should have unlimited time for their enforcement.

403 Ill. at 559–60, 87 N.E.2d at 649 (citations omitted). We find the reasoning of the Illinois Supreme Court persuasive and hold that the application of A.R.S. § 12–550 to a regulatory takings action based on the Arizona and United States constitutions does not violate these constitutional guarantees. Indeed, the Arizona Supreme

Court has recognized that the "legislature may impose a reasonable time within which an action must be brought to recover damages ... under a constitutional provision." *Rutledge v. State,* 100 Ariz. 174, 180, 412 P.2d 467, 472 (1966).

■ The application of A.R.S. § 12–550 deprives Ranch 57 of any remedy it might have had against the County, and leaves intact any possible remedy against the City. On August 20, 1979, the County adopted the zoning ordinance which created the clear zones affecting the property of Ranch 57. It was on this date that the statute began to run. Ranch 57 did not file its complaint against the County until April 26, 1984, beyond the four-year period. The City passed Ordinance No. 1837 on June 20, 1979. The statute of limitations began to run as against the City in May, 1981, when Ranch 57's property was annexed by the City. Ranch 57 filed suit against the City on April 26, 1984, within the four-year statutory period.

## III. CONSTITUTIONAL STANDARDS FOR REVIEWING ZONING ORDINANCES

■ Ranch 57 advances two main constitutional arguments for reversal. First, it argues that Ordinance No. 1837 is an unconstitutional exercise of the police power. To prevail on such a contention, a litigant must show that the zoning ordinance is not reasonably related to public health, safety, morals, or welfare. *See Northern Westchester Professional Park Assoc. v. Town of Bedford,* 60 N.Y.2d 492, 500, 470 N.Y. S.2d 350, 354, 458 N.E.2d 809, 813 (1983). Second, it urges that the ordinance is an unconstitutional taking in violation of the fifth and fourteenth amendments to the United States Constitution,[1] and art. II, § 17 of the Arizona Constitution.[2] Under this theory, a litigant can argue that even though the zoning ordinance is reasonably related to a legitimate public purpose, the ordinance in question so frustrates property rights that compensation is required. Section IV, *infra.*

In *Corrigan v. City of Scottsdale,* 149 Ariz. 553, 720 P.2d 528 (App.1985), *aff'd in part, vacated in part,* 149 Ariz. 538, 720 P.2d 513 (1986), this court was called upon to decide whether a zoning ordinance creating a conservation area was unconstitutional. Under the ordinance, land within the conservation area was to remain as "permanent natural open space." This court held that the zoning ordinance in question was an unconstitutional exercise of the police power. The present case involves the related issue of the "taking" of private property even though the zoning ordinance is a valid exercise of the police power.

Zoning enactments are legislative acts and are thus presumed to be valid. *City of Phoenix v. Fehlner,* 90 Ariz. 13, 18, 363 P.2d 607, 610 (1961). The party challenging the ordinance has the burden of proving the unconstitutionality of the act. *Id.* at 18, 363 P.2d at 610. To establish that a zoning ordinance is unconstitutional as an improper exercise of the police power, one must demonstrate that the restrictions imposed are clearly arbitrary and unreasonable and have no substantial relationship to the public health, safety, morals or welfare.[3] *See, e.g., Nectow v. City of Cam-*

---

1. The fifth amendment provides "nor shall private property be taken for public use, without just compensation." The just compensation clause of the fifth amendment is applicable to the states through the fourteenth amendment. *See Chicago B. & Q. R.R. Co. v. City of Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 585, 41 L.Ed. 979, 985 (1897).

2. Article II, § 17 provides "[n]o private property shall be taken ... for public or private use without just compensation having first been made."

3. In *Corrigan,* this court may have appeared to require that a "deplorable condition" exist before a municipality could exercise its police power through the enactment of a zoning ordinance. 149 Ariz. at 561, 720 P.2d at 536. To the extent *Corrigan* can be read in this manner, we reject such a requirement.

Ranch 57 argues that *Corrigan* establishes a new standard by which to measure the legitimacy of a municipal exercise of zoning power. We are certain that the *Corrigan* court did not intend this. It is firmly established that a zoning ordinance will be upheld if it bears a reasonable relationship to the public health, safety, welfare

*bridge,* 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842, 844 (1928).

The judiciary has a limited role in zoning cases. We do not sit as "super-zoning commissions." *Rubi v. 49'er Country Club Estates, Inc.,* 7 Ariz.App. 408, 411, 440 P.2d 44, 47 (1968). This court in *City of Tempe v. Rasor,* 24 Ariz.App. 118, 536 P.2d 239 (1975), aptly stated the role of the judiciary in reviewing the reasonableness of a zoning ordinance:

> That the trial court or this court may disagree as to the advisability of an ordinance or the refusal to amend it, is of no moment, even if we were to indulge in the elusion that an imperfect zoning regulation may be corrected by judicial scrutiny on appeal. It is immaterial whether we would have been wiser if we had been called upon to perform this legislative function.... 'Therefore, where the reasonableness of a zoning ordinance is fairly debatable, it must be upheld.'

*Id.* at 120, 536 P.2d at 241. "Fairly debatable" is a phrase used in zoning law to describe the burden of proof of the party challenging the zoning ordinance. 1 R. Anderson, *American Law of Zoning, 2d* § 3.20 (1976) (Anderson). Therefore, in order to succeed, a party must prove the ordinance to be so clearly arbitrary or unreasonable as to take the issue beyond debate. If reasonable minds could differ as to whether a zoning ordinance has a substantial relation to a fundamental purpose of the police power, the ordinance must be upheld. *Rasor,* 24 Ariz.App. at 120, 536 P.2d at 241.

The trial court ruled that Ordinance No. 1837 was a valid exercise of the police power. We agree. In responding to the City's motion for summary judgment, Ranch 57 failed to address the issue of reasonableness. Nor did it produce any affidavits to challenge the City's assertion of reasonableness. The City, however, did argue that Ordinance No. 1837 was reasonable. In light of Ranch 57's failure to

rebut the argument of reasonableness, the trial court correctly ruled in favor of the City on this issue.

Our conclusion is also supported by the fact that the reasonableness of Ordinance No. 1837 is fairly debatable. Certainly, establishing a clear zone around a commercial and military airport can be viewed as a restriction to provide for the safety of persons both living around the airport and those who use the airport. The preamble to Ordinance No. 1837 states "[t]he principal purpose of the Airport District is to promote the public health, safety and general welfare in the vicinity of the Marine Corps Air Station and the Yuma International Airport by minimizing exposure to high noise levels and accident hazards generated by airport operations and to encourage future development which is compatible with the continued operation of the airport." *See generally* A.R.S. §§ 2–321–33. In addition, the Arizona Legislature has found that military installations are beneficial to the safety of Arizona residents. The legislature has stated "that the continued existence of military airports is necessary for the national defense and the safety of the state and that the declaration of a moratorium affecting the development of land within the vicinity of a military airport is in the best interest of the state." Laws 1977, ch. 158, § 1.

In upholding a zoning ordinance affecting property around an airport, the Florida Supreme Court stated that such zoning "regulations not only promote the general welfare of the state and community served but contribute to the proper and orderly development of land areas in the vicinity of airports. Such regulations stabilize values and provide safety to those who use the airport facilities in taking off and landing as well as those living in the vicinity thereof." *Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Auth.,* 111 So.2d 439, 443 (Fla.1959). On the record before us, Ranch 57 has failed to carry its

---

or morals. *See generally Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). We are aware of no authority

which conditions the exercise of zoning power upon the existence of a deplorable condition.

burden of establishing the unreasonableness of Ordinance No. 1837. Therefore, we must uphold the ordinance as a constitutional exercise of the police power.

■ Appellant also argues that Ordinance No. 1837 is invalid because it was enacted by a political subdivision that did not have the authority to rezone the property in question. We disagree. The Arizona Legislature has given municipalities the power to "adopt, administer and enforce ... airport zoning regulations" for "airport hazard area[s] within [their] territorial limits." A.R.S. § 2-324(A). Ranch 57 contends that when the ordinance was adopted, its property was not within the city limits of Yuma. Ultimately, its property was annexed by the City. Ranch 57 did not challenge the validity of the ordinance until after the annexation. Ranch 57's argument was valid, if at all, between the date the ordinance was originally adopted and the date of annexation. During this period, it could have filed an action for declaratory relief seeking to have the ordinance declared void. However, when Ranch 57 finally chose to challenge the ordinance, its property was within the Yuma city limits.

## IV. CONSTITUTIONAL STANDARDS FOR A TAKING OF PRIVATE PROPERTY

### A. *Federal Constitutional Standards*

■ Although a zoning ordinance may be a proper exercise of the police power, it nevertheless may result in an unconstitutional taking of property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425, 102 S.Ct. 3164, 3170, 73 L.Ed.2d 868, 876 (1982); *see generally* 1 A. Rathkopf, *The Law of Zoning and Planning* §§ 6.01-.12 (4th ed. 1985); 7 P. Rohan, *Zoning and Land Use Controls* §§ 52.01-52A.06 (1986). Ranch 57 also challenges Ordinance No. 1837 on this basis. .

While the United States Supreme Court has handed down several opinions in regulatory takings cases, the Court has not created a "set formula to determine where regulation ends and taking begins." *MacDonald, Sommer & Frates v. Yolo County*, — U.S. —, —, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986) (quoting *Goldblatt v. Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130, 134 (1962)). Seemingly little has been done by the Court to clarify the statement of Justice Holmes "that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326 (1922). The Court's analysis still tends toward an ad hoc factual inquiry. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 638 (1978). The Supreme Court has stated, however, that certain factors do serve as guidelines for these ad hoc inquiries.

The just compensation clause of the fifth amendment was designed to bar government from forcing some people alone to bear the burden which, in all fairness, should be borne by the public as a whole. *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554, 1561 (1960). Legislation designed to promote the public welfare, however, often places burdens on some persons more than others. *Penn Central Transp. Co.*, 438 U.S. at 133, 98 S.Ct. at 2663. For example, in *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915), the Supreme Court upheld a zoning ordinance which prohibited the operation of a brickyard and caused a 92.5% diminution in the value of the property. Thus, the Court has held that the deprivation of the most beneficial use of property and diminution in value are not sufficient in and of themselves to constitute a taking. *See Goldblatt*, 369 U.S. at 592, 82 S.Ct. at 988; *Penn Central Transp. Co.*, 438 U.S. at 127, 98 S.Ct. at 2660.

In *Penn Central Transp. Co.*, the Court listed three factors which are significant in these cases: (1) the economic impact of the regulation; (2) the extent to which the regulation interferes with investment-backed

expectations; and (3) the character of the governmental action. 438 U.S. at 124, 98 S.Ct. at 2659. In *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 112 (1980), the Court stated that the application of a zoning law to a particular piece of property effects a taking if the ordinance denies an owner economically viable use of his land. Thus, the first two *Penn Central Transp. Co.* factors assist the Court in determining when there is no economically viable use of the land. Finally, the Court has held that the courts are not to look at each distinct property right which inheres in a particular piece of property. Rather, courts must look at the property as a whole. *Penn Central Transp. Co.,* 438 U.S. at 130, 98 S.Ct. at 2662 (interference with air rights); *but see Corrigan v. City of Scottsdale,* 149 Ariz. at 563–65, 720 P.2d at 538–40.

The regulatory takings jurisprudence of the United States Supreme Court can be summarized as follows. In determining whether a zoning regulation has "taken" private property, a court, looking at the parcel as a whole, must determine whether the regulation deprives the owner of the economically viable use of his land. To determine this, a court should look at the economic impact of the regulation and the extent to which the regulation interferes with investment-backed expectations. If the zoning ordinance leaves an economically viable use of the land, no taking will have occurred.

### B. *Arizona Constitutional Standards*

Arizona regulatory takings jurisprudence follows federal law in at least two respects. First, diminution in the value of land alone is not sufficient to constitute a taking of private property. *Fehlner,* 90 Ariz. at 19, 363 P.2d at 611. Second, deprivation of the most beneficial use of the land standing alone, is not sufficient to constitute a taking of private property. *Rubi,* 7 Ariz.App. at 412, 440 P.2d at 48.

The Arizona Supreme Court, however, has articulated a standard by which to measure when an unconstitutional taking has occurred. In the landmark case of *City of Phoenix v. Fehlner,* the court held that " '[t]o sustain an attack upon the validity of the ordinance an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions upon his property preclude its use for any purpose to which it is reasonably adapted.' " 90 Ariz. at 19, 363 P.2d at 611 (quoting *Arverne Bay Const. Co. v. Thatcher,* 278 N.Y. 222, 226, 15 N.E.2d 587, 589 (1938)). The Arizona Supreme Court later reaffirmed the rule in *Fehlner* in *City of Phoenix v. Oglesby,* 112 Ariz. 64, 66, 537 P.2d 934, 936 (1975).

The Arizona standard could be construed as inconsistent with the federal standard of economic viability because "any reasonable purpose" might conceivably include even an unprofitable use. Accordingly, we must clarify the Arizona standard to bring it into harmony with federal law. Arizona takings law is derived from the decisions of the New York Court of Appeals. Hence, it is logical that we look to the New York Court of Appeals for guidance.

In *Fehlner,* the Arizona Supreme Court adopted the test announced by the New York Court of Appeals in *Arverne Bay Const. Co.* The New York Court of Appeals has, however, modified the test enunciated in that decision. The New York Court of Appeals has more recently held that a zoning ordinance constitutes a taking of private property where the restrictions deprive the owner of any reasonable use for which the property is "adapted and thus destroys its economic value, or all but a bare residue of its value." *Fred F. French Inv. Co. v. City of New York,* 39 N.Y.2d 587, 596, 385 N.Y.S.2d 5, 10, 350 N.E.2d 381, 387 (1976).

Under this approach,[4] the landowner must prove that any use permitted by the zoning ordinance will fail to yield a reasonable return on the property. *See National Merritt, Inc. v. Weist,* 41 N.Y.2d 438, 445–

---

4. The approaches used by the states to determine whether a taking of property has occurred vary from jurisdiction to jurisdiction. *See generally* 1 Anderson §§ 3.23–.34.

46, 393 N.Y.S.2d 379, 385, 361 N.E.2d 1028, 1034 (1977). Thus, the phrase "any reasonable use" is interpreted as a use which is economically viable—one that allows a reasonable return on the property. The New York standard is consistent with our understanding of federal constitutional requirements. Therefore, we interpret the Arizona Supreme Court's reasonable use test to mean an economically viable use.

We must now determine whether the trial court correctly found that Ranch 57 had an economically viable use of its property despite the limitations imposed by the ordinance. In the proceeding below, Ranch 57 submitted the affidavit of Ray Meinhardt, one of three owners of the property. He stated that the property was not profitable as an agricultural venture and that it was always considered to be, and designed to be, a commercial development. This affidavit, read in a light most favorable to Ranch 57, places in issue whether agricultural uses will allow it to realize a reasonable return. The City's planning director stated in an affidavit that the property had been used for agricultural purposes since 1973. This affidavit is insufficient to prove as a matter of law that Ranch 57 has not been deprived of any reasonable return on its property. Indeed, the City does not even argue that Ranch 57 need be given any reasonable rate of return but only that it be allowed any reasonable use. As we have already said, a use is not reasonable unless the landowner can make it economically productive. Accordingly, the trial court erred in granting summary judgment in favor of the City. The judgment is reversed and this case is remanded to the trial court for a determination as to whether Ranch 57 may use the property for any economically viable purpose despite the limitations imposed by Ordinance No. 1837.

If on remand, Ranch 57 proves that Ordinance No. 1837 has effected a taking of property without just compensation, Ranch 57's remedies will be: (1) an order declaring the ordinance unconstitutional as applied to Ranch 57's property, (2) temporary damages, *Corrigan v. City of Scottsdale*, 149 Ariz. 538, 720 P.2d 513, suffered by Ranch 57 during the period from the date the property was subject to Ordinance No. 1837 until the date the property was condemned.

The judgment in favor of the County is affirmed. The judgment in favor of the City is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

BROOKS, P.J., and JAMES MOELLER, Superior Court Judge, concur.

Note: The Honorable JAMES MOELLER, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.