Preston S. MILLER and Ola Mae Miller,
Appellants,

v.

COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, et al.,
Appellees.

Court of Appeals of Kentucky.

Nov. 17, 1972.

W. Currie Milliken, G. D. Milliken, Jr., Bowling Green, for appellants.

Harold D. Ricketts, Harlin, Parker, Ricketts, Lucas & English, Bowling Green, M. H. Smith, Louisville, Charles Huddleston, Bowling Green, for appellees.

CATINNA, Commissioner.

Preston S. Miller and Ola Mae Miller owned a tract of land in Bowling Green, Kentucky, fronting on the Old Morgantown Road, the road being the northwest boundary of the tract. They operated Miller's Bottled Gas Company on a part of the tract, and a large storage tank used in the operation was located near the east boundary. The main north-south tracks of the Louisville and Nashville Railroad Company were located approximately 160 feet east of the property, and across the tracks from the Miller property there was a spur track. Propane gas for distribution by the company was brought in by rail tank cars and delivered to the Millers on this spur track. A gas transmission line extended from the spur west across the main tracks, south on the railroad right of way a distance of 481 feet, and then west to the Millers' storage tank. The line was used to transfer gas from tank cars on the spur to the storage tank.

The Millers' occupancy and use of the spur track were governed by a contract made with L & N under which the spur was built and maintained. The contract by which they acquired the right to use the spur provided in part as follows:

"(4) The first party hereby reserves the right and it is fully authorized at its pleasure, without let, hindrance or previous notice, to disconnect said track from its tracks, and take up and remove said rail, frog, switch fixtures and all other track material from first party's right of way."

On the same date that the Millers were granted the use of the spur, L & N executed an agreement by which Preston S. Miller, as licensee, acquired the right to construct and maintain the gas line on the railroad right of way. The agreement provided for an annual rental of $10 and year-to-year renewals. It further provided that either party could at any time terminate the agreement upon giving thirty days' notice in writing to the other party.

In 1966 and 1967 the Department of Highways initiated a street-improvement program which included the construction of University Drive, the extension of Dogwood Drive, and the elimination of the grade crossing on the Old Morgantown Road. This project required the construction of a street along the east side of L & N's main north-south tracks and the relocation of a part of the Old Morgantown Road.

The Old Morgantown Road was rerouted across the northeast end of the Miller property. However, a small triangular piece of the property was left on the opposite side of the relocated road from the remainder of the property. The Millers refused to convey to the Department the right of way required for relocation of the road across their property. A condemnation proceeding was filed, the right of way condemned, and the Millers awarded $11,070 by a Warren Circuit Court jury for the property taken. Judgment was entered on December 10, 1968, set aside on August 25, 1969, and re-entered on August 28, 1969. The Millers appeal from this judgment.

On May 23, 1967, L & N conveyed to the Department of Highways, as right of way for the new street to be constructed alongside its main north-south tracks, a parcel of land adjoining the tracks on the east. The Miller portion of the spur track and the east end of the gas line were located on this tract. The Millers continued to use the spur track and the gas pipeline until their removal in early 1968.

It might be well to note at this point that the Department of Highways upon acquiring the tract, the spur track, and the

east end of the gas pipeline succeeded to all rights and obligations of L & N under its agreements with the Millers.

After the removal of the spur track and part of the gas pipeline, the Millers filed a "reverse condemnation action" in the Warren Circuit Court against the Department of Highways. The Department then filed a third-party complaint against L & N alleging a breach of the general warranty in its deed. L & N and the Department filed motions for summary judgment. The motions were sustained, and the complaint, amended complaint, and third-party complaint were dismissed with prejudice.

The trial court determined that the condemnation proceeding filed by the Department against the Millers and their reverse condemnation proceeding against the Department contained common questions of law and fact, and he therefore consolidated them "for appeal in a single appeal."

The judgment dismissing the complaint, amended complaint and third-party complaint, and consolidating the two actions for the purpose of appeal was entered on August 28, 1969.

The Millers appeal from this judgment.

Unfortunately, the court reporter who took the proceedings and evidence on the trial of the condemnation case has misplaced her shorthand notes and tapes. The record before us consists of the pleadings, exhibits filed, and a brief narrative statement of the evidence and proceedings.

The first ground upon which the Millers urge reversal is:

"The Court erred in failing to consider the value of Appellants' interest in and to the railroad spur line and gas transmission line, which was connected to and contiguous with the Appellants' property when said spur line and gas transmission line was taken and destroyed by the Commonwealth."

The spur track and the gas pipeline were hardly contiguous with the Miller property.

The spur was separated from the condemned right of way by the Sharer tract which was 160 feet wide and the right of way of L & N's main north-south tracks which was 66 feet wide. The only connecting link was the gas pipeline which extended from the side of the spur track to the storage tank near the east boundary of the Miller tract.

Plats filed with the record show that the property taken by the condemnation proceeding did not include the storage tank or gas pipeline and that the business of Miller's Bottled Gas Company was not in any manner affected by the relocation of the Old Morgantown Road.

Exceptions to the commissioner's report filed in the county court questioned the award because it gave no consideration to the spur track in determining the amount awarded. Upon appeal to the Warren Circuit Court, it was again claimed that the spur track was being taken without an award being made for the Millers' interest in the spur track. These pleadings were sufficient to put all parties and the court on notice of the claim in issue.

■ The narrative statement of evidence and proceedings filed in the record makes no mention of the spur track or the pipeline, its very brevity defeating its purpose. There is nothing to indicate that this issue was even presented upon a trial of the action, much less that the court failed to consider the value of the spur track or the gas pipeline. Since there is no transcript of the evidence available, it would be the sheerest of speculation to conclude that the court failed to give proper consideration to the issue.

■ In the absence of the evidence in the record, we must presume that the judgment of the trial court was supported by the evidence. Travelers Indemnity Company v. Patrick, Ky., 386 S.W.2d 256 (1964); Commonwealth, Department of Highways v. Richardson, Ky., 424 S.W.2d 601 (1968); Clay v. Clay, Ky., 424 S.W.2d 583 (1968).

The Millers' second ground for reversal is:

"The Court erred in granting a motion for summary judgment in the reverse condemnation proceeding seeking compensation for the taking of the spur line and gas transmission line, which was connected to and contiguous with Appellants' property, and which was taken by the Commonwealth."

The legal capacity of the Millers to prosecute the reverse condemnation action is open to serious question. The Department of Highways had previously succeeded to the rights and obligations of L & N under its spur track and gas pipeline agreement with the Millers, thereby creating a landlord-tenant relationship which by its very character prohibits this type of action. However, this is a question not now before us and one upon which we express no opinion.

There is no genuine issue of a material fact in this reverse condemnation proceeding. Pleadings, exhibits, and answers to requests for admissions result in an established factual situation in regard to both the spur track and gas pipeline. It was admitted by all parties that the spur track agreement could be cancelled at any time without notice; that use of the gas pipeline was dependent upon the continued existence of the spur track; and that the Department of Highways acquired from L & N the tract which included the spur track and the gas pipeline.

■ The spur track agreement was terminable at will, and the Department of Highways having succeeded to the title of landlord by the conveyance had the right to terminate the tenancy of the Millers as to the spur track at any time. Commonwealth v. Fultz, Ky., 360 S.W.2d 216 (1962). The removal of the spur in 1968 acted as such termination.

■ In view of the fact that the agreement could be cancelled at any time, the Millers were at the best tenants-at-will. A tenant-at-will has no such interest in the property as would entitle him to compensation upon a taking. Nichols on Eminent Domain, Vol. 2, Sections 5.23(5) and 5.23 (6); 29A C.J.S. Eminent Domain Section 198; Tate v. State Highway Commission, 226 Mo.App. 1216, 49 S.W.2d 282 (1932).

■ Since the Commonwealth was entitled to a judgment on the law applicable to the facts as established, the court did not err in sustaining the motions for summary judgment. Ingram v. Ingram, Ky., 283 S.W.2d 210 (1955).

■ The Millers' third ground for reversal is:

"The Court erred in orally reinstructing the jury and directing them to return and reconsider their verdict and in accepting a corrected verdict when the first verdict, by the jury was not within the testimony offered at the trial and the second verdict awarded the same difference in before and after value."

Testimony in the condemnation proceeding established the lowest before value of the right of way condemned at $48,600. The jury found the before value to be $47,520. This amount was below the lowest of the before values fixed by the evidence and therefore was not within the range of the evidence. The trial court informed the jury of this fact and refused to accept the verdict. He directed the jury to return to the jury room and there reconsider its verdict. There is nothing in the record to indicate any impropriety on the part of the court in requiring the jury to reconsider its verdict. In fact, it was the duty of the court upon discovery of this discrepancy to require the jury to reconsider and change its verdict. Anderson's Ex'x v. Hockensmith, Ky., 322 S.W.2d 489 (1959); Willett v. Bradas & Gheens, 283 Ky. 525, 142 S.W.2d 139 (1949).

The judgment is affirmed.

All concur.