815 P.2d 932

**LAIDLAW WASTE SYSTEMS, INC., a foreign corporation; Heemstra and Slager, Inc., an Arizona corporation, dba Arizona Waste Services; and Sunrise Disposal Services, Inc., an Arizona corporation, Plaintiffs–Appellants,**

v.

**CITY OF PHOENIX, a municipal corporation, Defendant–Appellee.**

No. 1 CA–CV 89–581.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 20, 1991.

---

John Friedeman, Phoenix, for plaintiffs-appellants.

Roderick G. McDougall, City Atty., by Larry F. Felix, Asst. Chief Counsel, Phoenix, and Meyer, Hendricks, Victor, Osborn & Maledon by Andrew D. Hurwitz, Phoenix, for defendant-appellee.

## OPINION

EHRLICH, Judge.

The plaintiffs, Laidlaw Waste Systems, Heemstra and Slager, and Sunrise Disposal Services ("the companies") appeal from the trial court's dismissal of their amended complaint alleging that the City of Phoenix had taken their property without providing just compensation. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

 Upon review of a trial court's grant of a motion to dismiss, we accept the facts alleged by the non-moving party in the complaint as true. *Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984). We will uphold the dismissal if the plaintiff is not entitled to relief under the facts alleged. *Id.*

The companies had been providing private trash collection services to residents in an area that the City annexed in 1988. Prior to annexation, the companies had made substantial capital investments in equipment, facilities, and personnel to provide services in this area. Upon annexation, the City began providing comparable residential trash collection services, which the residents were required to subsidize through taxes and sanitation fees whether or not they utilized the City's collection services. Accordingly, if residents in this area desired private trash collection services, they were required to pay twice. The companies were unable to compete with the City and abandoned their services in the area, thereby losing clients, contract rights with those clients, and the goodwill and going-concern value of that share of their businesses.

Shortly after annexation, the companies filed a petition in the trial court to set aside the City's annexation on the ground that it impaired their constitutional rights. The trial court issued a preliminary injunction enjoining the annexation from which the City appealed. The City also filed a petition for special action in this court to have

the injunction set aside. We accepted jurisdiction of the special action and quashed the preliminary injunction, holding that it was an inappropriate remedy for the claim that the companies' property would be taken upon annexation. *City of Phoenix v. Superior Court,* 158 Ariz. 214, 762 P.2d 128 (App.1988). The City then withdrew its appeal and the companies filed an amended complaint in inverse condemnation, claiming that the City had taken their property without just compensation. The City filed a motion to dismiss, which the trial court granted on the basis that the City's actions were lawful competition and not a compensable taking. The companies then appealed.

## DISCUSSION

On appeal, the companies argue that the City's application of its sanitation regulations to the residents of the newly-annexed territory rendered their business interests in that area valueless and therefore constituted a compensable taking. They contend that they are entitled to compensation for the contract rights, trade routes, goodwill and going-concern value of that share of their businesses taken by the City.

Because the companies do not contest the validity of the City's annexation or its sanitation regulations, we only must decide whether the City's subsequent application of its sanitation regulations to the resi-

dents in the annexed area effected a taking of the companies' properties. We hold that it did not.

█ Both the Arizona and United States Constitutions [1] prohibit the government from taking private property without just compensation.[2] Stated generally, a compensable taking occurs when a government's actions unjustly impose the burdens of carrying out public policy on a few individuals. *E.g., Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 123–24, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) (quoting *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). A compensable taking is more easily identified when the government physically interferes with an individual's property "than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659.

This case is atypical because the companies do not claim that there was a physical invasion or occupation of their property, or that the City directly regulated their businesses; the companies were allowed to continue services in the annexed area. While the analyses of traditional regulatory cases are instructive, *see St. Joseph's Hospital v. Maricopa County,* 163 Ariz. 132, 136, 786 P.2d 983, 987 (App.1989), *cert. denied,* —

---

1. The Arizona Constitution provides: "No private property shall be taken or damaged for public or private use without just compensation having first been made, ...." Ariz. Const. art. II, § 17. The United States Constitution provides: "[n]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment is made applicable to the states through the Fourteenth Amendment of the United States Constitution. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). This court has harmonized the takings clauses of the two constitutions. *Ranch 57 v. City of Yuma,* 152 Ariz. 218, 226–27, 731 P.2d 113, 121–22 (App.1986).

2. Although the taking of intangible property has been recognized as compensable under the United States Constitution, *see generally Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (going-concern value

of business compensable damage when government temporarily takes over plant), Arizona courts have been more reluctant to recognize business losses as compensable property interests. *See Choisser v. State ex rel. Herman,* 12 Ariz.App. 259, 261, 469 P.2d 493, 495 (1970) (loss of customers, business, or profits non-compensable as independent items of damages but only evidence of decrease in property value after taking, citing *State ex rel. Herman v. Schaffer,* 105 Ariz. 478, 467 P.2d 66 (1970)); *State ex rel. LaPrade v. Carrow,* 57 Ariz. 429, 433, 114 P.2d 891, 893 (1941) (business injury not compensable interest unless allowed by statute); *cf. State ex rel. Miller v. Gannett Outdoor Company of Arizona, Inc.,* 164 Ariz. 578, 579, 795 P.2d 221, 222 (App.1990) (unexpired term of lease compensable property interest but expectation of renewal not compensable). However, we need not decide this issue because we hold that the City's actions do not effect a taking.

U.S. ——, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990), these cases provide that there is no formula to determine when a government regulation constitutes a taking. *E.g., Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659; *Ranch 57 v. City of Yuma*, 152 Ariz. 218, 225, 731 P.2d 113, 120 (App.1986). Our inquiry, therefore, is primarily ad hoc and factual, *id.*, although the United States Supreme Court has articulated factors to guide our decision.

 First we consider whether the sanitation regulations are within the City's police power, in other words, whether the regulations are reasonably necessary to advance a substantial public purpose. *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (citing *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928)); *Penn Central*, 438 U.S. at 127, 98 S.Ct. at 2660. However, even if the regulations are proper, they still may result in an unconstitutional taking. *E.g., Ranch 57*, 152 Ariz. at 225, 731 P.2d at 120. Accordingly, we next inquire whether the regulation denies the owner the economically viable use of the property. *Agins*, 447 U.S. at 260, 100 S.Ct. at 2141 (citing *Penn Central*, 438 U.S. at 138 n. 36, 98 S.Ct. at 2666 n. 36).

> The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. See *Goldblatt v. Hempstead*, [369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1960) ]. So, too, is the character of the governmental action.

*Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659. *Accord St. Joseph's Hospital*, 163 Ariz. at 136–37, 786 P.2d at 987–88; *Ranch 57*, 152 Ariz. at 225–26, 731 P.2d at 120–21.

The companies concede that the City's sanitation regulations are proper and enforceable exercises of its governmental powers. The focus then is on the second aspect of the analysis in determining whether the City's actions constituted a compensable taking. As to whether the sanitation regulations denied the companies the economically viable use of their properties, the companies allege that the economic impact of the regulations rendered their businesses in the annexed area valueless. They also claim that the City's actions interfered with their reasonable investment-backed expectations because they had contributed significant amounts of money and time in developing their businesses, purchasing equipment and hiring personnel to serve clients in the area. The City responds that it merely was engaging in lawful competition.

We agree with the trial court that the City's actions do not amount to a compensable taking, but are appropriately described as competition with the companies, although on unequal terms. The United States Supreme Court has held that a city is not precluded from establishing a waterworks system in competition with a private company despite the fact that such competition may render the company's property less valuable. *Knoxville Water Co. v. Knoxville*, 200 U.S. 22, 37–38, 26 S.Ct. 224, 229, 50 L.Ed. 353 (1906). Similarly, our supreme court has found that a city's extension of water service into an area previously served by a private water company was not an unconstitutional taking of property when both the city and the water company were authorized to provide water service in the annexed area. *City of Tucson v. Polar Water Co.*, 76 Ariz. 126, 134–35, 259 P.2d 561, 567 (1953). *See also Menderson v. City of Phoenix*, 51 Ariz. 280, 76 P.2d 321 (1938) (city and private bus companies both could operate service within city).

 Courts in other jurisdictions have decided that a government's garbage collection services in newly-annexed areas previously served by private trash haulers did not effect an unconstitutional taking, but rather lawful competition. *See Stillings v. City of Winston–Salem*, 311 N.C. 689, 319 S.E.2d 233 (1984) (exclusive private franchise for trash collection in county limited by city's rights to annex and exercise police powers over portions of the territory); *City of Estacada v. American Sanitary Service, Inc.*, 41 Or.App. 537, 599 P.2d 1185

(1979) (city not required to honor private waste collection service's county franchise); *Calcasieu Sanitation Service, Inc. v. City of Lake Charles*, 118 So.2d 179 (La.App. 1960) (private trash haulers' contract rights to provide garbage collection service subject to city's authority to provide such service at lesser cost in annexed areas). In addition, a government's exercise of its right to compete with businesses that results in the diminution or destruction of the value of the businesses within the area does not transform lawful competition into a compensable taking. *Stillings*, 311 N.C. at 696–97, 319 S.E.2d at 238.[3] *See also ABC Bus Lines, Inc. v. Urban Mass Transportation Admin.*, 831 F.2d 360, 362 (1st Cir.1987) (private enterprise not constitutionally protected from public competition); *Hladek v. City of Merced*, 69 Cal.

App.3d 585, 138 Cal.Rptr. 194 (1977) (municipal competition not a "taking").

 While the City's actions resulted in economic hardship to the companies, the application of its sanitation regulations to residents in the annexed area did not effect a compensable taking under the Arizona and United States Constitutions. The City entered into lawful competition to provide services to the annexed area. We therefore affirm the trial court's dismissal of the amended complaint.

TAYLOR and CLABORNE, JJ., concur.

---

[3] There may be a compensable taking when a statute or regulation requires compensation or prohibits competition in a territory, or when a city specifically prohibits an established business from operating in a newly-annexed area. *E.g., City of Mesa v. Salt River Project*, 92 Ariz. 91, 373 P.2d 722 (1962) (statute forbidding establishment of competing public utility service requires city to acquire utility's interests by condemnation before providing electricity to annexed areas previously served by utility); *Metro-politan Services, Inc. v. City of Spokane*, 32 Wash.App. 714, 649 P.2d 642 (1982) (although not constitutionally required, statute requires city to compensate trash collection company for termination of its right to collect trash in annexed area). During the second regular session of the 39th Arizona legislature, a bill was introduced in the senate that would have required compensation for competing private businesses in newly-annexed areas, but it was not passed.