John M. BAGFORD and Fae H. Bagford,
Plaintiffs and Appellants,

v.

EPHRAIM CITY, a municipal
corporation, Defendant
and Appellee.

No. 940155.

Supreme Court of Utah.

Oct. 11, 1995.

Marcus Taylor, Richfield, for plaintiffs.

Jody K. Burnett, Salt Lake City, for Ephraim City.

David L. Church, Salt Lake City, for amicus Utah League of Cities & Towns.

STEWART, Associate Chief Justice:

Plaintiffs John M. Bagford and Fae H. Bagford, proprietors of a garbage collection business, appeal a district court judgment holding that an Ephraim City garbage collection ordinance does not result in a taking of the Bagfords' private garbage collection business. The ordinance provides for municipal garbage collection and requires all city residents to pay a fee for the city's garbage collection, whether or not the residents are using the city's facilities. The Bagfords assert that the district court erred in ruling that their loss of business from residential customers in Ephraim City because of competition with the city was not property within the meaning of article I, section 22 of the Utah Constitution. We affirm.

The Bagfords own and operate Sanpete Valley Disposal and Landfill, a garbage collection and disposal business located in Sanpete County, Utah. From 1984 until August or September 1989, the Bagfords provided garbage collection services to residential and commercial customers in Ephraim City and other municipalities and unincorporated areas in Sanpete County. The Bagfords competed with other garbage collection businesses in Sanpete County. The Bagfords used informal, oral agreements with customers pursuant to which the Bagfords provided their garbage collection services. They offered garbage collection to their customers on a weekly basis, fifty-two weeks each year, and charged their customers for each pickup the customers actually required. If a customer did not require weekly pickup or left town for vacation or an extended period of time and did not use the Bagfords' services, the customer was not required to pay.

Whenever the residents put the garbage out, the Bagfords picked it up.

In 1989, Ephraim City decided to develop a municipal garbage collection system to bring the city into compliance with federal and state health and safety regulations. Ephraim City formed a citizens ad hoc committee to study the issue and eventually accepted the committee's recommendation to contract with a private company to provide regular garbage collection services for residents within the city.

In May and June 1989, Ephraim City accepted bids for garbage collection services and subsequently awarded a residential service contract to the successful bidder. The Bagfords were among several competitors that bid unsuccessfully for the contract. In October 1989, Ephraim City adopted Ordinance 10–412, which provides:

> All residences to include trailers, one, two, three, and multiple family dwellings, who are charged residential electrical service rates, will have garbage collection as arranged by Ephraim City.

Ephraim City, Utah, Rev.Ordinances ch. 10–400, part 10–412. At the time the ordinance was enacted, the Bagfords provided garbage collection services to 176 residential customers in Ephraim City and to a number of commercial enterprises. The latter were not affected by Ephraim's change in policy.

Ephraim City also adopted monthly garbage collection charges to be assessed against each residence. The charges are included on the monthly billing for municipal electrical services sent to each residence and must be paid even if the resident does not use the garbage collection services provided by the city. As a result, the Bagfords' 176 residential customers terminated their agreements with the Bagfords and began using the garbage collection services provided by Ephraim City to avoid having to pay double for garbage collection. The Bagfords contin-

ue to provide weekly garbage collection services to approximately thirty-two commercial customers.

The Bagfords then brought this action for inverse condemnation against Ephraim City, alleging that the enactment and implementation of the ordinance resulted in a taking of property within the meaning of article I, section 22 of the Utah Constitution and asserting that they were entitled to damages for that taking.[1] Following a bench trial, the district court ruled that the Bagfords had failed to establish the elements of a taking because the loss of business from the city's competition did not rise to the level of a protected property interest within the meaning of article I, section 22 and because Ephraim City did not directly prohibit the Bagfords from competing for the business of Ephraim City residents.

On appeal, the Bagfords claim that the district court erred in ruling that their oral agreements were not private property within the meaning of article I, section 22 and that no taking had occurred with respect to their residential garbage collection business in Ephraim City. These issues present questions of law which we review for correctness, granting no deference to the trial court's legal conclusions. *Reliance Ins. v. Utah Dep't of Transp.*, 858 P.2d 1363, 1366 (Utah 1993); *Ong Int'l (U.S.A.) v. 11th Ave. Corp.*, 850 P.2d 447, 452 (Utah 1993).

Article I, section 22 of the Utah Constitution provides, "Private property shall not be taken or damaged for public use without just compensation." This provision is broader in its language than the similar provision in the Fifth Amendment of the United States Constitution. To recover under article I, section 22, a claimant must possess a protectable interest in property that is taken or damaged for a public use. *See Farmers New World Life Ins. v. Bountiful City*, 803 P.2d

1. The Bagfords initially brought their claim under article I, section 22 of the Utah Constitution and under the Fifth and Fourteenth Amendments to the United States Constitution. Ephraim City removed the action to the United States District Court, District of Utah, and then moved to dismiss the claims under the United States Constitution for failure to satisfy ripeness and finality requirements. The parties stipulated to dismissal of the federal claims without prejudice and to a remand of the claims under the Utah Constitution to the state district court. The Bagfords' claims under the Fifth and Fourteenth Amendments to the United States Constitution are not before us.

1241, 1243–44 (Utah 1990); *Colman v. Utah State Land Bd.*, 795 P.2d 622, 625 (Utah 1990). In *Colman*, we observed:

> Many statutes and ordinances regulate what a property owner can do with and on the owner's property. Those regulations may have a significant impact on the utility or value of property, yet they generally do not require compensation under article I, section 22. Only when a governmental action rises to the level of a taking or damage under article I, section 22 is the State required to pay compensation.

*Id.* at 627.

The Bagfords assert that article I, section 22 makes no distinction between personal and real property, that a "taking" of both tangible and intangible property interests is compensable under that provision, and that the law recognizes that both the power of eminent domain and an action for inverse condemnation extend to personal, intangible, and incorporeal property rights such as contracts. The city and the amicus argue that the only property that is protected by article I, section 22 is real property or rights associated with real property.

 While contract rights are also a form of "private property," not all contract rights rise to the level of a property interest cognizable under article I, section 22. Article I, section 22 also protects all types of private property that are protected by the Fifth Amendment of the United States Constitution. This Court has stated, " 'The kinds of property subject to the [eminent domain] right ... [are] practically unlimited.' " *Farmers*, 803 P.2d at 1244 (quoting *Lund v. Salt Lake County*, 58 Utah 546, 200 P. 510, 512 (1921)). Under general principles of eminent domain, property is not limited to land or improvements thereon, *id.*, but " '[e]very species of property which the public needs may require, ... [including] legal and equitable rights of every description—[is] liable to be thus appropriated.' " *Lund*, 58 Utah at 552, 200 P. at 512 (quoting Cooley, *Constitutional Limitations* 646 (6th ed.)).

The United States Supreme Court has also long held that the term "property" in the Fifth Amendment Takings Clause includes not only real property, but also incorporeal rights such as franchises. In *West River Bridge Co. v. Dix*, 47 U.S. 507, 533–34, 12 L.Ed. 535 (1848), the Court stated:

> A distinction has been attempted, in argument, between the power of a government to appropriate for public uses property which is corporeal, ... and the like power in the government to resume or extinguish a franchise. The distinction thus attempted we regard as a refinement which has no foundation in reason.... A franchise is property and nothing more; it is incorporeal property....

A century after *West River Bridge Co.*, the Court reaffirmed the principle that the intangible character of property alone does not preclude compensation for it. The Court held in *Kimball Laundry Co. v. United States*, 338 U.S. 1, 11, 15–16, 69 S.Ct. 1434, 1442–43, 93 L.Ed. 1765 (1948), that a governmental taking of a laundry's intangible "trade routes," meaning customer lists and continued patronage, required just compensation. And in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04, 104 S.Ct. 2862, 2872–73, 81 L.Ed.2d 815 (1984), the Court held that trade secrets are a form of intangible property protected by the Takings Clause of the Fifth Amendment.

Respected treatises also make clear that for purposes of eminent domain, the term "property" is not limited to real property. "The power of eminent domain extends to real estate, improvements on land, all kinds of personal property, and even intangible or incorporeal rights." 29A C.J.S. *Eminent Domain* § 56 (1992). Thus, "[i]ntangible property, such as choses in action, patent rights, franchises, charters or any other form of contract, are within the scope of [eminent domain] ... as fully as land or other tangible property." 1 Julius L. Sackman & Patrick J. Rohan, *Nichols' The Law of Eminent Domain* § 2.1[2] (rev. 3d ed. 1995).

 Some kinds of contractual rights may also be "property" that can be "taken" for a public use. In *Long Island Water Supply Co. v. City of Brooklyn*, 166 U.S. 685, 690, 17 S.Ct. 718, 720, 41 L.Ed. 1165 (1897), the Court held that "a contract is property, and like any other property, may be taken under

condemnation proceedings for public use. Its condemnation is of course subject to the rule of just compensation." (Citations omitted.) And in *City of Cincinnati v. Louisville & Nashville R.R.*, 223 U.S. 390, 400, 32 S.Ct. 267, 268, 56 L.Ed. 481 (1912), the Court reiterated that "[e]very contract, whether between the state and an individual, or between individuals only, is subject to this general law [of eminent domain]." *See also Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934) (valid contracts are property for purposes of Takings Clause). *See generally* 29A C.J.S. *Eminent Domain* § 56 (1992); 26 Am.Jur.2d *Eminent Domain* § 81 (1966).

However, to create a protectable property interest, a contract must establish rights more substantial in nature than a mere unilateral expectation of continued rights or benefits. *See Ruckelshaus*, 467 U.S. at 1005, 104 S.Ct. at 2873; *State v. Valentine*, 10 Utah 2d 132, 136, 349 P.2d 321, 323 (1960); *State v. Tedesco*, 4 Utah 2d 31, 38, 286 P.2d 785, 789–90 (1955).

■ Absent an exclusive franchise or the equivalent thereof, no vested, legally enforceable interest arises, and consequently, there is no property that can provide the basis for compensation in an inverse condemnation proceeding. *See State v. Gray*, 81 N.M. 399, 467 P.2d 725, 728 (1970). In a similar vein, a mere expectation of a renewal of a lease is not a legal right that constitutes property subject to a "taking." And tenancies that are terminable at will do not establish a property interest subject to a "taking" that requires compensation. *Petry v. City & County of Denver*, 123 Colo. 509, 233 P.2d 867, 870 (1951); *Miller v. Department of Highways*, 487 S.W.2d 931, 934 (Ky.Ct.App. 1972); *Hanna v. Hampden County*, 250 Mass. 107, 145 N.E. 258, 259 (1924). Thus, a contract that is terminable at the will of either party does not by itself give rise to a protectable property interest because the mere expectation of benefits under such a contract does not give the promisor a legally enforceable right against a promisee to provide future service and therefore does not by itself provide a basis for compensation for loss of future business.

■ The Bagfords contend that their oral agreements with their customers were protectable property interests within the meaning of article I, section 22. However, the Bagfords' agreements with their customers were simply offers to collect garbage that the customers could accept or reject each week. Because the agreements were terminable at will by either the Bagfords or their customers, the Bagfords possessed no enforceable, legally binding rights until they had collected garbage from their customers, and then the only enforceable right the Bagfords possessed was the right to compensation for the services already rendered. The Bagfords had no legal right to perform garbage collection services indefinitely. The expectation that they could continue to collect their customers' garbage was not a contract right cognizable under article I, section 22.

We recognize that the Bagfords no doubt invested capital to acquire the necessary equipment to carry on their garbage collection business for Ephraim City residents and suffered revenue losses caused by Ephraim City's change of policy. Nevertheless, the Takings Clause does not insure businesses against all losses caused by competition or by the effect of governmental regulations.

The Bagfords buttress their claim that they had a property interest that was "taken" by Ephraim City by asserting that their "contracts" and "business relationships with their customers" were like a property interest created by a franchise granted by the city to collect garbage. Relying on inverse condemnation cases involving the taking of franchise rights, the Bagfords argue that they have a legal right to compete for residential customers within Ephraim City and that because an Ephraim City ordinance in effect precludes them from continuing to provide services to those customers, their business has been taken.

The argument is based on a misconception as to the nature of the relationship between Ephraim City and the Bagfords. The city has not granted the Bagfords a franchise that establishes either an exclusive or even a nonexclusive right to collect garbage from the residents of the city. The Bagfords pos-

sess no certificate of public convenience and necessity and no contract with, or license from, Ephraim City granting them a right to collect residential garbage within the city. Their business in Ephraim City was based only on the expectation of being able to continue doing business there, not on a legal right to do so. It follows that their investment of money in the expectation that they would be able to continue their business in Ephraim City indefinitely is not a protectable property interest.

 Even if it could be said that the Bagfords had a franchise of some sort, they clearly did not have an exclusive franchise. A nonexclusive franchise does not protect a franchise holder from losses caused by competition. In *Williams v. Public Service Commission,* 754 P.2d 41, 54 (Utah 1988), we held that a nonexclusive certificate to operate a one-way paging service did not guarantee the recipient of the certificate a right to operate in a protected market and was not, therefore, property for purposes of the Takings Clause. Furthermore, competition by a governmental agency that causes a private business financial losses is not a "taking" of property. *Knoxville Water Co. v. Knoxville,* 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353 (1906); *Las Vegas Valley Water Dist. v. Michelas,* 77 Nev. 171, 360 P.2d 1041 (1961). Thus, although a private company may possess a franchise to provide garbage collection services within a service area, no taking occurs if the government operates a competing service within that service area. "It is generally accepted that a governmental agency is not precluded from competing with its franchisee despite the fact that the franchise is diminished or destroyed by such competition." *Stillings v. City of Winston–Salem,* 311 N.C. 689, 319 S.E.2d 233, 238 (1984). If the governmental agency does not prohibit the private company from continuing to offer its services, there is no compensable taking. *See, e.g., Laidlaw Waste Sys., Inc. v. City of Phoenix,* 168 Ariz. 563, 815 P.2d 932, 936 (Ct.App.1991); *Calcasieu Sanitation Serv., Inc. v. City of Lake Charles,* 118 So.2d 179, 181 (La.Ct.App.1960); *Hudgins v. Metropolitan Gov't of Nashville,* 885 S.W.2d 74, 77 (Tenn.Ct.App.1994).

 The Bagfords contend that Ephraim City prohibited them from providing garbage collection services by passing Ordinance 10–412. That ordinance had the effect, as the trial court found,

> of forcing residents to use the monthly collection services and facilities of Ephraim City because otherwise they would have to pay two different people; and they would have to pay for the services because of the Ordinance, in order to get electrical power, and because there would not be a place to take the garbage anywhere else since they could no longer burn it in Ephraim City.

In its conclusions of law, the trial court stated, "Ephraim City did not prohibit any competing activity or take any other governmental action rising to the level of a taking under Article I, Section 22 of the Utah Constitution."

The Bagfords contend that the effect of the ordinance was to prohibit them from engaging in their business in Ephraim City since the residents would not pay twice for the same service. By requiring the residents to pay the city, whether or not they used the city's garbage collection service, the city in effect precluded residents from doing business with the Bagfords.

 It is clearly correct that the Bagfords were put at a severe, if not fatal, competitive disadvantage by the ordinance. A private business's competitive disadvantage in competing with a municipality does not, however, result in a taking of the private business property. In *Laidlaw Waste Systems v. Phoenix,* 168 Ariz. 563, 815 P.2d 932 (Ct.App. (1991), an Arizona appellate court decided an issue almost squarely on point with the instant case. In *Laidlaw,* trash collection companies that had been providing private trash collection services to residents in an area that the city had annexed found themselves unable to compete with the city and abandoned their services in the area, thereby losing their clients, contract rights with those clients, and the good will and going concern value of that share of their business. The city provided comparable residential trash collection services, which the

residents were required to subsidize through taxes and sanitation fees, whether or not they utilized these services. The court held that the city's actions did not amount to a compensable taking but were "appropriately described as competition with the companies, although on unequal terms." *Id.* 815 P.2d at 935; *see also Calcasieu Sanitation Serv., Inc. v. City of Lake Charles,* 118 So.2d 179 (La.Ct.App.1960) (private trash haulers' contract rights to provide garbage collection service subject to city's authority to provide such service at lesser cost in annexed areas). That principle was followed in *Stillings v. City of Winston–Salem,* 311 N.C. 689, 319 S.E.2d 233 (1984), even though the trash collection company whose business was damaged had an exclusive private franchise in the area in which the municipality commenced competition upon annexation of the territory. *See also City of Estacada v. American Sanitary Serv., Inc.,* 41 Or.App. 537, 599 P.2d 1185 (1979). *But see Coeur d'Alene Garbage Serv. v. City of Coeur d'Alene,* 114 Idaho 588, 759 P.2d 879 (1988).

In sum, the Bagfords have failed to demonstrate that they have a protectable property interest in their business in Ephraim City under article I, section 22 and therefore have failed to establish the elements of a "taking."

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur.